Argued and submitted December 6, 2019, affirmed November 18, 2020

KARLYN EKLOF,
*Petitioner-Appellant,*

*v.*

Rob PERSSON,
Superintendent,
Coffee Creek Correctional Facility,
*Defendant-Respondent.*

Washington County Circuit Court
C120242CV; A167037

477 P3d 1215

Petitioner appeals a judgment denying post-conviction relief. She contends that the post-conviction court abused its discretion when it denied her motion for leave to amend her petition for post-conviction relief. She argues that the relevant factors weighed in favor of granting leave to amend. Relatedly, she argues that, in assessing the colorable merits of her proposed amendments, the post-conviction court should not have considered anything other than the pleadings. *Held*: The post-conviction court did not abuse its discretion in denying petitioner's motion for leave to amend. The relevant factors support the court's decision, and the court did not err in considering petitioner's prior statements in other legal proceedings, which were part of the record before the court, in assessing the colorable merit of her amendments.

Affirmed.

Linda Louise Bergman, Senior Judge.

Lindsey Burrows argued the cause for appellant. Also on the briefs was O'Connor Weber LLC.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

Petitioner appeals a judgment denying post-conviction relief. In her first assignment of error, she claims that the post-conviction court abused its discretion when it denied her motion for leave to amend her petition for post-conviction relief. For the reasons explained below, we conclude that the court did not abuse its discretion in denying leave to amend. In her second assignment of error, petitioner challenges the admission of a particular exhibit during her post-conviction trial; we reject that assignment without written discussion. Accordingly, we affirm.

FACTS

Petitioner was convicted of aggravated murder in 1995 and sentenced to life in prison without the possibility of parole. After an unsuccessful appeal and an unsuccessful timely petition for post-conviction relief, petitioner filed a successive petition for post-conviction relief in 2012, which she later amended twice.

In her second amended petition (the operative petition), petitioner alleged that her trial counsel provided inadequate and ineffective assistance with respect to a particular jury instruction (first claim) and that she was denied due process as a result of *Brady* violations related to trial witnesses John Distabile and David Tiner (second claim). *See Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963) (a prosecutor's withholding of favorable evidence from a criminal defendant "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). The post-conviction court granted summary judgment to the superintendent on both claims. On appellate review, the Supreme Court reversed the summary judgment ruling on the second claim and remanded for further proceedings. *Eklof v. Steward*, 360 Or 717, 737, 385 P3d 1074 (2016).

On remand, petitioner moved for leave to amend her petition for a third time, seeking, as relevant here, to allege additional *Brady* violations related to trial witnesses

Alven Hope, Jerry Smith, and John Distabile.[1] As to Hope, petitioner sought to allege that the prosecution had withheld evidence that, at the time of petitioner's trial, Hope was under investigation for child sexual abuse and possession of child pornography, that Hope had prior convictions for robbery and interference, and that Hope had told the police a different story about how he acquired the murder weapon than what he testified at petitioner's trial. As to Smith, petitioner sought to allege that the prosecution had withheld evidence that Smith had a reputation in the community for dishonesty. As to Distabile, petitioner sought to allege that the prosecution had withheld a letter from Distabile's attorney to the prosecutor offering Distabile's cooperation in exchange for transactional immunity.

With respect to the timing of her claims, petitioner alleged at the end of her proposed third amended petition that she "could not reasonably have raised the above grounds for relief at her criminal trial, on direct appeal, during the two-year statute of limitations, or in her first post-conviction proceeding, because neither the Lane County District Attorney nor the Oregon Department of Justice disclosed the above described (and attached) evidence to petitioner during any of those proceedings."

The superintendent opposed petitioner's motion, arguing that four pertinent factors weighed against allowing leave to amend. *See Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000) (identifying four factors relevant to the court's exercise of discretion). With respect to one factor, the colorable merit of the proposed amendments, the superintendent brought to the court's attention statements that petitioner had made in her original 1999 post-conviction proceeding and in a 2004 federal habeas proceeding, as showing that petitioner

---

[1] We limit our discussion to petitioner's proposed amendments to her *Brady* claim. Petitioner also sought to add four new claims: a *Napue* claim based on the prosecutor having not corrected false testimony by Hope about his criminal history, *see Napue v. Illinois*, 360 US 264, 269, 79 S Ct 1173, 3 L Ed 2d 1217 (1959), and three claims of "actual innocence." However, petitioner's appellate arguments are directed solely to her *Brady* claim. She does not challenge the denial of leave to add the other claims, or at least she has not developed any such argument. *See State v. Martinez*, 275 Or App 451, 452 n 1, 364 P3d 743 (2015) (we do not consider undeveloped arguments for reversal).

had raised or could have raised her new *Brady* allegations in her original post-conviction proceeding. The materials provided by the superintendent showed that petitioner had offered Distabile's attorney's letter as an exhibit in the 1999 proceeding, had cited the Distabile letter in the 2004 proceeding, had raised Smith's alleged reputation for dishonesty in both the 1999 and 2004 proceedings, and had made statements in the 2004 proceeding that revealed that she was aware of or had learned of the Hope evidence while the 1999 proceeding was ongoing. The superintendent argued that petitioner's own statements in prior legal proceedings showed that her amended *Brady* claim was not colorable in a successive petition.

For all of the reasons argued by the superintendent, the post-conviction court denied petitioner's motion for leave to amend her post-conviction petition. Petitioner proceeded to trial on her second amended petition and was denied post-conviction relief. Petitioner appeals the resulting judgment, challenging the post-conviction court's denial of her motion for leave to amend.

## ANALYSIS

Under ORCP 23 A, a party may amend a pleading once within a certain time as a matter of course. Otherwise, a party may amend only by leave of the court or by written consent of the adverse party. ORCP 23 A. Here, petitioner sought to file a third amended petition over the superintendent's objection, so she could amend only by leave of the post-conviction court. *See Young v. Hill*, 347 Or 165, 171, 218 P3d 125 (2009) (recognizing that, except as otherwise provided in the post-conviction statutes, the Oregon Rules of Civil Procedure apply in post-conviction proceedings). The court denied such leave.

We review a post-conviction court's denial of leave to amend a petition for abuse of discretion. *Ramsey*, 162 Or App at 144. In doing so, we recognize that the post-conviction court has "broad discretion with respect to amendment of post-conviction pleadings," but we also recognize that "the exercise of that discretion should comport with ORCP 23 A's directive that leave to amend 'shall be freely given when

justice so requires.'" *Id*. (quoting ORCP 23 A; other internal quotation marks omitted).

We have previously identified four considerations relevant to a post-conviction court's exercise of discretion whether to allow amendment: (1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments. *Ramsey*, 162 Or App at 145. Those factors are nonexclusive. *Field v. Myrick*, 299 Or App 634, 640, 449 P3d 895 (2019). They also are not required to be given equal weight. *Day v. Day*, 299 Or App 460, 478, 450 P3d 1 (2019) (rejecting an argument that the trial court necessarily abused its discretion in denying leave to amend if three of the four *Ramsey* factors favored granting leave to amend, because we do not "mechanically count" *Ramsey* factors to determine whether the court abused its discretion).

In this case, the superintendent argued that all four *Ramsey* factors weighed against allowing amendment, and the post-conviction court adopted the superintendent's reasoning in denying leave to amend. On appeal, petitioner argues that the court erred in its analysis of all four factors, while the superintendent focuses on the fourth factor, which he views as dispositive regardless of the other factors. Even though the superintendent, as respondent, focuses on one factor, we consider all of the factors on which the post-conviction court relied in deciding whether the court abused its discretion. We therefore consider each *Ramsey* factor.

The post-conviction court did not err by agreeing with the superintendent that the nature of the proposed amendments and their relationship to the existing pleadings disfavored amendment, at least with respect to the alleged *Brady* violations related to Hope and Smith. Although petitioner had already pleaded a *Brady* claim in the operative petition, the new allegations would have injected new issues related to two entirely different witnesses and, as petitioner acknowledges, would have required new discovery. *See Day*, 299 Or App at 479. The timing of the proposed amendments and related docketing concerns also weighed at least

somewhat against amendment. Petitioner filed her successive petition in 2012, she moved to amend her petition for the third time in 2017, and the case was scheduled to go to trial (and did go to trial) only two months after the hearing on the motion. *Cf. Downs v. Waremart, Inc.*, 137 Or App 119, 140-41, 903 P2d 888 (1995), *rev'd in part on other grounds*, 324 Or 307, 926 P2d 314 (1996) ("Given the age of the case and the proximity of the trial date, we conclude that the trial court did not abuse its discretion in denying leave to amend.").

As for prejudice, having to prepare additional defenses is not the type of prejudice contemplated by *Ramsey*. "[G]eneral consequences that tend to accompany any amendment are not prejudice of a sort that weighs against allowing an amendment under ORCP 23 A." *Day*, 299 Or App at 480. Here, the superintendent made a somewhat more nuanced argument, suggesting that the prejudice was in having to prepare additional defenses with respect to claims that were untimely and could not prevail. That argument effectively overlaid the superintendent's arguments about the other *Ramsey* factors onto what would otherwise have been an unavailing prejudice argument. In context, we do not understand the post-conviction court to have given the prejudice factor weight *independent* of those other *Ramsey* factors.

The fourth factor is the colorable merit of the proposed amendments, *i.e.*, their "likelihood of success," *Ramsey*, 162 Or App at 148, which requires a lengthier discussion because of a procedural dispute between the parties as to what the court could consider in assessing colorable merit.

Because this case involves a successive petition, the timeliness escape clauses in ORS 138.510(3) and ORS 138.550(3) apply, potentially allowing petitioner to pursue what otherwise would be an untimely claim. Ultimately, to prevail on her proposed amended *Brady* claim, petitioner would have to allege and prove that the state knew of evidence favorable to the defense and failed to disclose it in violation of *Brady*; that petitioner's trial counsel was excusably unaware of the *Brady* violations; *and* that petitioner could not reasonably have raised the claim within the

two-year period set out in ORS 138.510 or in her original post-conviction proceeding. *Eklof*, 360 Or at 728 (explaining that the first two requirements apply to any post-conviction relief petition, while the third applies to a successive petition). In a successive petition, it is the petitioner's burden to prove that a post-conviction claim comes within the escape clauses and therefore is not barred by the two-year limitations period in ORS 138.510(3)(b) or as a successive petition under ORS 138.550(3). *Eklof*, 360 Or at 722 n 3, 727.

Petitioner argues that the post-conviction court should not have considered statements from the 1999 and 2004 proceedings in assessing whether her proposed amended *Brady* claim was colorable in a successive petition. Those statements are in the record as exhibits to the superintendent's opposition to petitioner's motion for leave to amend, and petitioner does not contest that they are part of the record. However, petitioner argues to us, as she did to the post-conviction court, that her motion had to be decided based solely on the allegations in the pleadings, taking all of her factual allegations as true, and that nothing outside the pleadings could be considered in assessing the colorable merit of the proposed amendments. In petitioner's view, the court could only consider evidence outside the pleadings in a future summary judgment proceeding or when deciding her claim at trial.[2]

In response, the superintendent contends that the post-conviction court could consider information outside the pleadings in assessing the colorable merit of the proposed amendments. He first argues that petitioner's allegation in her proposed amended pleading—that she "could not reasonably have raised the [newly alleged] grounds for relief at her criminal trial, on direct appeal, during the two-year statute of limitations, or in her first post-conviction proceeding"—is a bare legal conclusion that "amounts to a nullity" in a pleading. *Kelley v. Mallory*, 202 Or 690, 697, 277 P2d 767 (1954); *see also Fearing v. Bucher*, 328 Or 367,

---

[2] Petitioner did not move to strike the superintendent's exhibits, and they were not stricken—so they were part of the record before the court. However, petitioner did argue that nothing outside the pleadings should be considered in ruling on her motion, thus preserving that portion of her claim of error regarding the denial of leave to amend.

375 n 5, 977 P2d 1163 (1999) ("An ultimate fact is a fact from which legal conclusions are drawn. A conclusion of law, by contrast, is merely a judgment about a particular set of circumstances and assumes facts that may or may not have been pleaded."); *Moore v. Willis*, 307 Or 254, 259, 261, 767 P2d 62 (1988) (affirming grant of motion for judgment on the pleadings, where the plaintiff alleged that the defendant "should have known" of a risk, which was merely a legal conclusion that the defendant was negligent, without alleging ultimate facts that would justify drawing that legal conclusion).

We agree that a petitioner merely asserting that she could not reasonably have raised her claims during the two-year period defined in ORS 138.510(3) or during her original post-conviction proceeding is in the nature of a legal conclusion, not a factual assertion that a post-conviction court is required to accept as true. That is, such an allegation amounts to nothing more than a legal conclusion that a proposed claim comes within the escape clauses of ORS 138.510(3) and ORS 138.550(3). *See* ORS 138.510(3) (creating escape clause from two-year time limitation where the post-conviction court "finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition"); ORS 138.550(3) (creating escape clause for successive petition where the post-conviction court "finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition").

But petitioner did not make only that conclusory assertion. She also provided one factual allegation in support of it: that the reason that she could not have raised the claim earlier was "because neither the Lane County District Attorney nor the Oregon Department of Justice disclosed the [subject] evidence to petitioner during any of those proceedings"—*i.e.*, during petitioner's criminal trial, direct appeal, or first post-conviction proceeding. Petitioner maintained that, absent such disclosure, she could not raise the claim earlier. The difficulty for petitioner is that her specific factual assertion has minimal relevance to the colorable merit of her claim. What is relevant for the escape clauses is when petitioner learned of the undisclosed evidence, not

necessarily when *the state* disclosed it to her. *See Eklof*, 360 Or at 726 (describing the escape clauses as applying "[w]hen *Brady* materials are not *discovered* until more than two years after a criminal defendant's conviction has become final" (emphasis added)).

The applicability of the escape clauses is a critical issue in a successive petition. To state a colorable claim, petitioner had to plead—because she ultimately would have to prove—*facts* that would allow the court to determine that she could not reasonably have raised her amended *Brady* claim in her original post-conviction proceeding. In the absence of any pleaded facts supporting application of the escape clauses, the post-conviction court could fairly conclude that petitioner's claims lacked colorable merit for purposes of a successive petition. To be clear, we are not suggesting that petitioner had to conclusively prove that the escape clauses applied—as petitioner suggests that the superintendent is arguing—but only that she needed to plead some facts sufficient to create a *colorable* claim that the escape clauses applied, if she wanted the post-conviction court to view her proposed amended *Brady* claim as colorable in deciding whether to exercise its discretion to allow leave to amend the petition.[3]

Thus, the post-conviction court potentially could have denied petitioner leave to amend based on the proposed amendments facially lacking colorable merit, coupled with the other *Ramsey* factors, and we would be deciding now whether that was an abuse of discretion. But that is not what happened. Here, the court denied the petition only after considering material outside the pleadings that was put into the record and argued by the superintendent. We therefore must consider whether it was permissible for the court to do so, because, if not, the appropriate disposition would be to remand for the court to re-exercise its discretion with a legally correct understanding of what it should consider with respect to the fourth *Ramsey* factor.

---

[3] We disagree with petitioner's suggestion in her reply brief that, as to the escape clauses, if her pleading lacked sufficient facts to make out a colorable claim, the post-conviction court nonetheless had to assume that the claim was colorable and allow the amendment, even if it might subsequently grant a motion to dismiss on the pleadings.

The question, then, is whether the post-conviction court could look outside the pleadings at all in assessing whether the claim was colorable. The superintendent argues that it was permissible for the court to do so, although it falls short in identifying persuasive authority. The superintendent largely relies on the court's authority to strike "sham" allegations—*see In re Marriage of Ross*, 240 Or App 435, 440, 246 P3d 1179 (2011) (an allegation that is "good in form" but "false in fact" may be stricken as a "sham" if it is "obviously false" or is "shown to be false" (internal quotation marks omitted))—but, given that the court did not strike any allegations or indicate that it viewed any allegations as strikable, that authority is not particularly apt. Nor is the authority cited by petitioner—requiring the court to assume as true all factual allegations in the amended pleading, *see, e.g.*, *Jensen v. Duboff*, 253 Or App 517, 524-25, 291 P3d 738 (2012)—entirely on point, because, here, the factual material outside the pleadings (regarding when plaintiff learned of the evidence) is not inconsistent with the factual allegation in the pleading (regarding the state not disclosing it to her). The court could take the pleading to be true and also accept the truth of the other material.

Although the authorities cited by the parties provide limited insight, we find guidance in *Day*, a case decided after the parties completed their briefing. Like this case, *Day* involved a motion to amend governed by ORCP 23 A. 299 Or App at 477. The plaintiff sought to add three new claims to her civil complaint. *Id*. The trial court denied leave to amend, and the plaintiff appealed. *Id*. at 476. In analyzing the fourth *Ramsey* factor, we explained that, even assuming that the proposed new allegations were sufficient to state claims, "the trial court was not required to limit its assessment of the colorable merit of those claims to the bare allegations of the proposed amended complaint" but, rather, "was permitted to consider them in light of the existing case, including defendant's challenge to the original complaint." *Id*. at 481. Viewed in that light, the proposed amendments lacked colorable merit, because they failed to address pleading and evidentiary deficiencies identified in an earlier summary judgment proceeding, and "the trial court was entitled to conclude that plaintiff would likely be

unable to produce that evidence." *Id*. The fourth *Ramsey* factor therefore "weigh[ed] heavily" against amendment. *Id*. at 482.

*Day* supports the conclusion that the post-conviction court was not limited to considering *only* the allegations in petitioner's proposed third amended petition and could look more generally to the record in the case. Certainly, a court must exercise prudence in looking beyond the pleadings to assess whether a proposed amendment is colorable—the fourth *Ramsey* factor should not be treated as a mechanism to hold a mini-trial on the merits of a new claim. Here, however, the record contains undisputed evidence of statements made by petitioner or her counsel in earlier judicial proceedings closely related to this one, specifically petitioner's original 1999 post-conviction proceeding and a 2004 habeas proceeding. We see no reason why the post-conviction court could not consider those statements in assessing the colorable merit of petitioner's proposed amended *Brady* claim. We also agree with the superintendent that the prior statements were such that the post-conviction court could reasonably conclude that the amended *Brady* claim was not colorable—and are not persuaded otherwise by petitioner's contrary arguments in her reply brief.

Accordingly, we conclude that the post-conviction court did not abuse its discretion in denying leave to amend.[4]

Affirmed.

---

[4] Given our disposition, we do not address the superintendent's alternative arguments that petitioner waited too long to allege the additional *Brady* violations, even if she could have filed a successive petition under the escape clauses at an earlier time, or that petitioner's additional *Brady* allegations lack colorable merit due to claim or issue preclusion arising from the 2004 federal habeas proceeding.