Argued and submitted November 2, 2021; resubmitted January 25; decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings April 21, 2022

KARLYN EKLOF,
*Petitioner on Review,*
*v.*

Rob PERSSON,
Superintendent,
Coffee Creek Correctional Facility,
*Respondent on Review.*

(CC C120242CV) (CA A167037) (SC S068347)

508 P3d 468

Petitioner filed a successive petition for post-conviction relief and sought to amend that petition a third time to make additional claims. The state objected, arguing that judicially noticeable facts demonstrated that petitioner could reasonably have brought her claims in her prior petition for post-conviction relief, so the claims violated ORS 138.550(3)'s bar on successive petitions. The post-conviction court agreed with the state and denied the motion for leave to amend. The post-conviction court then granted summary judgment to the state, and the Court of Appeals affirmed. *Held*: (1) The key inquiry in determining whether to allow a successive amendment to a pleading is prejudice, but futile amendments may also be denied; (2) the court may consider judicially noticeable facts in evaluating whether an amendment is futile; and (3) judicially noticeable facts indicated that some, but not all, of petitioner's proposed amended claims were futile.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

On review from the Court of Appeals.*

Lindsey Burrows, O'Connor Weber LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Jordan R. Silk, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Kristen G. Williams, McMinnville, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

* Appeal from Washington County Circuit Court, Linda Louise Bergman, Senior Judge. 307 Or App 585, 477 P3d 1215 (2020).

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, Garrett, and DeHoog, Justices.**

BALMER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

** Nakamoto, J., retired December 31, 2021, and did not participate in the decision of this case.

**BALMER, J.**

Petitioner was convicted of aggravated intentional murder in 1995 and sentenced to life in prison without the possibility of parole. In this, her second case seeking post-conviction relief, petitioner moved to amend her complaint a third time to introduce new claims that the state unlawfully withheld exculpatory evidence in petitioner's criminal trial. Under ORCP 23 A, after a pleading is amended once, further amendments require either the consent of the adverse party or leave of court. Here, the state[1] did not consent, so leave of the post-conviction court was required.

The post-conviction court considered, among other things, the state's argument that petitioner's proposed amended claims were barred as a successive petition under ORS 138.550(3). That bar applies unless the claims at issue "could not reasonably have been raised" in a prior petition. ORS 138.550(3). The state presented evidence from the records of earlier cases involving the same murder, which purported to show that petitioner or her counsel knew about the allegedly withheld evidence and the possibility that it was withheld, and, therefore, reasonably could have raised her claims. After considering that evidence, the post-conviction court denied petitioner leave to amend her petition.

Petitioner sought review, asking this court to resolve whether the merit of the proposed amendments, including whether they are procedurally barred, is relevant to determining whether to grant leave to amend under ORCP 23 A, and whether the post-conviction court erred in considering the state's evidence.

For the reasons explained below, we reiterate that the gravamen of the inquiry under ORCP 23 A is prejudice to the opposing party, and we clarify that merit is relevant only insofar as ORCP 23 A permits leave to be denied for futile amendments. We further conclude that a court may consider judicially noticeable facts in determining whether a proposed amendment is futile. In applying those rules to this case, we conclude that some of petitioner's claims were

---

[1] The superintendent of the Coffee Creek Correctional Facility is the nominal defendant. For convenience, we refer to the defendant as the "state."

not futile. Because the state and post-conviction court identified no meaningful prejudice to the state resulting from petitioner's proposed amendments, the post-conviction court abused its discretion in denying leave to amend. We therefore reverse the decision of the Court of Appeals and the judgment of the circuit court, and remand to the circuit court for further proceedings.

## I.  FACTS

Petitioner was convicted of aggravated intentional murder in 1995, based on evidence that she and an accomplice, Tiner, murdered petitioner's roommate. Among the state's witnesses in that proceeding were Distabile, Hope, and Smith. Petitioner was sentenced to life in prison without the possibility of parole. Petitioner unsuccessfully sought relief through direct appeal, a petition for post-conviction relief filed in 1999, and a federal petition for habeas corpus filed in 2004.

Petitioner then filed this successive petition for post-conviction relief, alleging, among other things, that she was denied due process because of *Brady* violations by the state. *See Brady v. Maryland*, 373 US 83, 87, 83 S Ct 1194, 10 L Ed 2d 215 (1963) (holding that a prosecutor's withholding of favorable evidence from a criminal defendant "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"). After petitioner had amended this petition twice for reasons not relevant here, the post-conviction court granted summary judgment to the defendant. This court reversed that judgment and remanded the case for further proceedings. *Eklof v. Steward*, 360 Or 717, 385 P3d 1074 (2016) (*Eklof I*).

On remand, petitioner moved for leave to amend her petition a third time, seeking to allege, as relevant here, additional *Brady* violations related to the three witnesses mentioned above: Smith, Hope, and Distabile. As to Smith, petitioner alleged that the state had withheld evidence that Smith had a reputation for dishonesty among local judges, prosecutors, and police. As to Hope, petitioner alleged that the state had withheld evidence that Hope had been under investigation for several sex abuse crimes. As to Distabile,

petitioner alleged that the state had withheld a letter from Distabile's attorney offering Distabile's "full and complete cooperation in exchange for transactional (i.e., total) immunity from prosecution in the \*\*\* murder [case]." Petitioner contended that that allegedly withheld evidence could have been used to impeach Smith, Hope, and Distabile at trial.

Under ORCP 23 A, petitioner needed the court's leave to amend her petition a third time. ORCP 23 A provides, in part:

> "A pleading may be amended by a party once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The clause, "leave shall be freely given when justice so requires," petitioner observed, gave the trial court discretion regarding the amendment. Petitioner directed the court's attention to four considerations that the Court of Appeals has identified to guide the appropriate exercise of that discretion:

> "(1) the nature of the proposed amendments and their relationship to the existing pleadings; (2) the prejudice, if any, to the opposing party; (3) the timing of the proposed amendments and related docketing concerns; and (4) the colorable merit of the proposed amendments."

*Ramsey v. Thompson*, 162 Or App 139, 145, 986 P2d 54 (1999), *rev den*, 329 Or 589 (2000). Petitioner contended that all four *Ramsey* considerations weighed in favor of amendment. Petitioner also contended that, in evaluating the motion for leave to amend, the court was required to assume the truth of the allegations in the amended petition. Petitioner emphasized that, because the strength of her claims depended on discoverable facts, justice required that she be permitted to amend her petition and proceed to discovery.

The state objected to petitioner's motion for leave to amend, arguing, as relevant here, that petitioner's proposed amendments were barred as a successive petition under

ORS 138.550(3).[2] That bar applies unless petitioner's claims "could not reasonably have been raised" in her prior petition. ORS 138.550(3). To support its position that petitioner knew about the allegedly withheld evidence, and its withholding, and that the *Brady* claims either could reasonably have been raised, or indeed had been raised, the state attached exhibits including filings submitted by petitioner in her prior cases, as well as transcripts of prior proceedings. The state also addressed the four *Ramsey* considerations, arguing, among other things, that allowing the amendment would prejudice the state because it would "add to the burden of having to prove this case all over again" and "make the Superintendent and the State meet these claims."

The post-conviction court denied petitioner's motion for leave to amend, adopting the state's reasoning without elaboration. Petitioner proceeded to trial on her second amended petition and, in the end, was denied post-conviction relief.

Petitioner appealed the resulting judgment, arguing, as relevant here, that the post-conviction court abused its discretion by denying her motion for leave to amend. Petitioner reiterated her position that the four *Ramsey* considerations weighed in favor of allowing the amendment.

In response, the state defended the post-conviction court's decision on the ground that petitioner's proposed claims lacked "colorable merit," the fourth *Ramsey* consideration. The state did not address any of the other three *Ramsey* considerations. The state defined a claim with "colorable merit" as one that "legitimately allege[d]" the facts that claimant would eventually have to prove. The state did not explain what it meant to allege something "legitimately," but, ultimately, the state appeared to argue that the

---

[2] ORS 138.550(3) provides, in part:

"All grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

allegations were not "legitimate" if they were contradicted by judicially noticeable facts and were therefore a "sham." *See* ORCP 21 E(1) (allowing the court to strike "any sham, frivolous, or irrelevant pleading or defense"). The state reasoned that, in this case, petitioner was required to "allege and prove facts establishing that she could not reasonably have raised [her] claims in a timely post-conviction proceeding—that is, establishing that the claims come within *** ORS 138.550(3)'s escape clause[]." The state then argued that judicially noticeable facts, specifically "petitioner's own oral and written representations" in her prior post-conviction and federal habeas cases, showed that she reasonably could have raised all her new claims in her first post-conviction proceeding, and that she could not now "legitimately allege" any facts to the contrary.

The Court of Appeals affirmed, relying on *Ramsey*'s four considerations and concluding that the post-conviction court did not abuse its discretion in denying petitioner's motion for leave to amend. *Eklof v. Persson*, 307 Or App 585, 477 P3d 1215 (2020) (*Eklof II*). Regarding the exhibits offered by the state from the records of prior related cases, the court decided that the post-conviction court, in evaluating the motion under ORCP 23 A, "could look more generally to the record in the case," *id.* at 595, and that the evidence here was in the record as exhibits to the superintendent's opposition to petitioner's motion for leave to amend, *id.* at 591.

Petitioner filed a petition for review, which we allowed.

## II.   ANALYSIS

We review a court's denial of leave to amend under ORCP 23 A for abuse of discretion. *Deep Photonics Corp. v. LaChapelle*, 368 Or 274, 300, 491 P3d 60 (2021). That discretion is bounded by the text of ORCP 23 A, which directs that "leave shall be freely given when justice so requires." The post-conviction court here did not explain its decision to deny leave, other than citing the reasons offered by the state. We consider whether denying leave here was a permissible exercise of discretion.

On review, both parties agree that the key inquiry driving the exercise of discretion under ORCP 23 A is the extent of prejudice to the adverse party. *See C.O. Homes, LLC v. Cleveland*, 366 Or 207, 216, 460 P3d 494 (2020) ("[T]he gravamen of the inquiry [under ORCP 23 A] is whether allowing a pretrial amendment would unduly prejudice the opposing party."). The parties disagree about whether the court can disallow an amendment that is futile, either in addition to or as part of the prejudice inquiry. As a subsidiary question, the parties dispute whether, in determining whether a proposed amendment is futile, the court can consider materials beyond the face of the proposed amendment itself.

The state argues that futility is a permissible consideration under ORCP 23 A because that rule was based on a federal rule (FRCP 15 (1976)) that had been interpreted by the federal courts to permit denial of leave to amend based on the futility of the proposed amended pleading. The state would define a futile amendment as one that either "fails as a matter of law," or "cannot survive scrutiny under governing pleading standards," such as *former* ORCP 21 A(8) (2017), *renumbered as* ORCP 21 A(1)(h) (2021) (governing motions to dismiss for "failure to state ultimate facts sufficient to constitute a claim"), or ORCP 21 E(1) (governing motions to strike "any sham, frivolous, or irrelevant pleading").

The state then argues that petitioner's proposed amendments here were futile due to the bar on successive petitions, ORS 138.550(3). (The state appears not to maintain its argument that the petition was also barred by the statute of limitations, ORS 138.510(3).) To determine whether that bar applied, the state contends, the court was permitted to rely on evidence from the "judicially noticeable public record" that purported to show that petitioner could reasonably have raised her claims in her prior post-conviction petition.

Petitioner, in contrast, argues that allowing the court to consider the merit (including the alleged futility) of a proposed amendment under ORCP 23 A contradicts the liberal amendment policy at the heart of that rule. Alternatively, petitioner suggests, if the court can consider

the merit of a proposed amended complaint, then, in so doing, the court must accept as true all facts alleged in the proposed amended pleadings and may not consider any other evidence or judicially noticeable facts. As a further alternative, petitioner contends that, even in light of the state's evidence in this case, petitioner's amendments were not futile.

A. *Futility of Proposed Amended Pleadings*

We begin with the first question, whether courts may consider the futility or merit of proposed amended pleadings in deciding whether to grant leave to amend. We interpret rules, including ORCP 23, by our usual method of statutory interpretation, looking to their text and context, along with their legislative history to the extent we deem appropriate. *A. G. v. Guitron*, 351 Or 465, 471, 268 P3d 589 (2011). Under ORCP 23 A, as quoted above, a party may freely amend a pleading once within a certain time. After that, subsequent amendments require leave of the court or, not relevant here, the consent of the adverse party.

The critical text for the purpose of this case is, "leave shall be freely given when justice so requires." ORCP 23 A. That standard is broad and does not alone resolve the questions here, but the wording does suggest two basic principles. The first principle is based on the clause "leave shall be freely given." "Freely," as used here, means "without restraint or reserve : PLENTIFULLY, ABUNDANTLY." *Webster's Third New Int'l Dictionary* 906 (unabridged ed 2002). Thus, ORCP 23 A directs courts to allow amendments "without restraint or reserve." But such decisions are also subject to the second clause, "when justice so requires," which leads us to the second principle. The clause, "when justice so requires," leaves it to the court to determine *what* justice requires but does not provide much specific direction as to how that standard should be applied. "Justice" can mean many things, of course, but here, we understand the word to refer to, at least, "the quality or characteristic of being just, impartial, or fair : FAIRNESS, INTEGRITY, HONESTY." *Id.* at 1228. We therefore understand the clause, "when justice so requires," to convey that the trial court's determination under ORCP 23 A is discretionary, but that the court must consider relevant aspects of justice, such as fairness.

Thus, although amendments are to be permitted "freely," which will ordinarily benefit the party seeking amendment, the additional component of the rule—"when justice so requires"—means that the court must consider the fairness to both parties of allowing the amendment.

ORCP 23 A operates within the context of a larger structure of pleading standards and procedures set forth in the Oregon Rules of Civil Procedure. One subset of rules, which includes ORCP 23 A, allows parties to defeat a pleading before trial in certain circumstances. Under ORCP 21 E(1), for example, the court may strike "any sham, frivolous, or irrelevant pleading," either on its own motion or the motion of a party. Under ORCP 21 A(1)(h) (*former* ORCP 21 A(8) (2017)), a party can move to dismiss a claim for relief in a pleading for "failure to state ultimate facts sufficient to constitute a claim." Under ORCP 47 C, a party may be granted summary judgment if it shows that "there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." An amended pleading may, like other pleadings, be subject to motions under each of those rules. Because ORCP 23 A was promulgated alongside those rules, and with different wording, we understand ORCP 23 A to set up a different, though sometimes overlapping, legal standard from each of those rules. In other words, contrary to the state's suggestion, we cannot rely entirely on those other pleading standards to determine whether justice requires an amendment to be allowed.

We turn next to the legislative history of ORCP 23 A. Promulgated as part of the adoption of the Oregon Rules of Civil Procedure in 1978, ORCP 23 combined the federal rule regarding amended pleadings then in effect, FRCP 15 (1976), with existing Oregon statutes. *See C.O. Homes, LLC*, 366 Or at 215 n 14; Council on Court Procedures, Staff Comment to Rule 23, *reprinted in* Frederic R. Merrill, *Oregon Rules of Civil Procedure: A Handbook* 48 (1981).

FRCP 15(a) (1976)[3] supplied the specific wording used in the relevant part of ORCP 23 A: that leave to amend

---

[3] FRCP 15(a) (1976) provided:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no

a pleading more than once "shall be freely given when justice so requires." Based on the rule's identical wording to that in the federal rule, and the staff comment to ORCP 23 A, it is clear that the relevant portion of ORCP 23 A was modeled after FRCP 15(a) (1976). "When the Oregon legislature adopts a statute modeled after another jurisdiction, an interpretation of that statute by the highest court of that jurisdiction that was rendered in a case decided before adoption of the statute by Oregon is considered to be the interpretation of the adopted statute that the Oregon legislature intended." *State v. Cooper*, 319 Or 162, 167-68, 874 P2d 822 (1994). In interpreting ORCP 23 A, therefore, we can turn to Supreme Court cases interpreting FRCP 15(a) prior to the promulgation of the Oregon Rules of Civil Procedure in 1978. There is one relevant case.

In *Foman v. Davis*, 371 US 178, 83 S Ct 227, 9 L Ed 2d 222 (1962), after the petitioner's complaint had been dismissed for failure to state a claim upon which relief might be granted, the petitioner asked to vacate the judgment so she could amend the complaint. *Id.* at 179. The trial court refused to vacate the judgment, but the Supreme Court reversed. *Id.* at 182. Citing FRCP 15(a), the Court wrote:

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.—the leave sought should, as the rules require, be 'freely given.'"

*Id.* (emphasis added). In that discussion, we see the familiar considerations of timing and prejudice, but also the

responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."

"futility of amendment." Although futility was not dispositive in *Foman*, that passage has been widely relied on in the lower federal courts. Those courts' opinions, although they are not binding on this court, offer perspective on how FRCP 15(a) and *Foman* had been interpreted and applied before the legislature adopted ORCP 23 A. *See, e.g., Smith v. Commanding Officer, Air Force Accounting*, 555 F2d 234, 235 (9th Cir 1977) (per curiam) (applying *Foman* to hold that the trial court was within its discretion to deny leave to amend "when the amendment would be 'futile' because [appellant] could not prevail on the merits because of the Government's immunity"); *Simons v. United States*, 497 F2d 1046, 1049 (9th Cir 1974) (considering whether the trial court should have deemed a pleading amended before dismissing it, and citing *Foman* for the proposition that the trial court "should have deemed the pleading amended for the purpose of ruling on the motion to dismiss, unless the amendment would have been futile"); *Freeman v. Continental Gin Company*, 381 F2d 459, 468-70, *reh'g den*, 384 F2d 365 (5th Cir 1967) (citing *Foman* and observing that the proposed amendment in that case, filed eight months after judgment issued, could have been refused as futile because the key evidence was barred by the parol evidence rule). Those cases reveal that FRCP 15(a) and *Foman* have been applied to disallow amendments that were futile for a variety of reasons.

The federal courts appear to take futility as an additional consideration, alongside prejudice, under FRCP 15(a). *See Foman*, 371 US at 182 (listing both prejudice and futility among reasons to deny amendments). This court's case law predating the Oregon Rules of Civil Procedure hints at a similar approach. *See Hume v. Kelly*, 28 Or 398, 410, 43 P 380 (1896) (upholding the rejection of a proposed amendment that would have left the complaint "subject to objections that [the amendment] was intended to obviate," and further noting that "[w]hile courts are always liberal in allowing amendments in furtherance of justice, * * * they will not do a vain thing"). We reiterate that prejudice remains the key inquiry under ORCP 23 A, but based on the above text, context, and legislative history of ORCP 23 A, we also agree with the federal courts that, even absent a showing of prejudice, justice does not require futile amendments to be allowed.

That conclusion leads inevitably to the question of what it means for an amendment to be futile. In general, "futile" means "serving no useful purpose : INEFFECTIVE, FRUITLESS." *Webster's* at 925. The Supreme Court has not thoroughly explained what "futile" means for purposes of FRCP 15 other than to imply that amendments should not be barred "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief." *Foman*, 371 US at 182. Supplementing that clause, the Ninth Circuit has held that leave to amend should be granted unless the complaint "cannot under any conceivable state of facts be amended to state a claim," *Alexander v. Pacific Maritime Association*, 314 F2d 690, 694 (9th Cir 1963), and that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect," *Breier v. Northern California Bowling Proprietor's Ass'n*, 316 F2d 787, 790 (9th Cir 1963). At other times, the Ninth Circuit has written that an amendment that "would state a claim for relief" was not futile, *Simons*, 497 F2d at 1049, and that one that "could not prevail on the merits" due to sovereign immunity was futile, *Smith*, 555 F2d at 235. The Fifth Circuit has noted, as another example, that an amendment may be futile if the proposed claims rely on evidence that has been properly excluded, and the proposed amendments do not allege facts to support admitting that evidence. *Freeman*, 381 F2d at 468-69.

The federal decisions turn on the allegations in the specific proposed amended proceedings and the facts in those cases. They describe the kind of amended pleading that would *not* be futile in different ways, from one that alleges a claim that would survive a motion to dismiss for "failure to state a claim upon which relief can be granted," FRCP 12(b)(6), to one that "may be a proper subject of relief," *Foman*, 371 US at 182. In any case, in view of the meaning of "futile" and the above case law, a nonfutile claim must be one that "could *** prevail on the merits," *Smith*, 555 F2d at 235, and is therefore not ineluctably "FRUITLESS," *Webster's* at 925.

Cast in terms of Oregon law, we similarly under-stand that a futile claim is one that could not prevail on the

merits due to some failing in the pleadings or some unavoidable bar or obstacle. For example, a claim over which the relevant court lacks subject matter jurisdiction would be futile because that claim could not proceed to the merits, much less prevail, and no discoverable facts could avoid that bar. *See* ORCP 21 A(1)(a) (providing for motions to dismiss for "lack of jurisdiction over the subject matter").

This court implicitly held as much in *Sanok v. Grimes*, 294 Or 684, 662 P2d 693 (1983). In *Sanok*, the plaintiff brought an amended complaint in the Tax Court, seeking to join additional defendants. *Id.* at 686. The Tax Court denied the motion to join and dismissed the complaint for lack of subject matter jurisdiction. *Id.* This court reversed, holding that some of the claims, but not all, were within the subject matter jurisdiction of the Tax Court. *Id.* at 701. This court then remanded the case "with leave to further amend the complaint in accordance with this opinion," that is, to add those claims over which the Tax Court had jurisdiction. *Id.* This court did not direct the Tax Court to allow the plaintiff to add those claims over which the Tax Court did not have jurisdiction, presumably because adding those claims would have been futile.

By the same reasoning, futile amendments might also include claims that, on their face, are barred by a statute of limitations, *see* ORCP 21 A(1)(i), or pleadings that fail to state ultimate facts sufficient to constitute a claim, *see* ORCP 21 A(1)(h). We note that that conclusion is in line with more recent federal interpretations of FRCP 15, postdating the promulgation of the Oregon Rules of Civil Procedure. *See Marucci Sports v. Nat'l Collegiate Athletic*, 751 F3d 368, 378 (5th Cir 2014) ("An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."); *Adams v. City of Indianapolis*, 742 F3d 720, 734, *reh'g den* (7th Cir), *cert den*, 574 US 875 (2014) ("[T]here is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.").

But the fact that an amended pleading, on its face, would not survive a motion to dismiss is not the only way an amended pleading may be futile. Here, the state's objection based on ORS 138.550(3) could have been raised in a

motion to dismiss or a motion for summary judgment. The standards for those two motions are different: A court evaluating those types of motions to dismiss is limited to the face of the proposed amended pleadings; a court considering a motion for summary judgment, however, can consider undisputed evidence beyond the pleadings, although it must do so in the light most favorable to the nonmoving party. Ordinarily, discovery related to claims in a pleading is available before summary judgment, but discovery related to new or amended claims may not be permitted until the amended pleading is allowed. Thus, for a court to conclude that a proposed amended pleading would be futile because it would likely fail on summary judgment, that court would have to conclude that no potentially discoverable evidence could defeat such a motion.

Here, petitioner does not appear to dispute that her claims would be barred by ORS 138.550(3) unless those claims "could not reasonably have been raised" in her prior petition. The parties also appear to agree that petitioner could reasonably have raised those claims if she or her counsel had discovered or reasonably should have discovered that the prosecutor had withheld the evidence at issue at a time when petitioner could reasonably have added corresponding claims to her prior post-conviction petition. For purposes of a motion to amend under ORCP 23 A, those claims would not be futile if it is possible that discoverable evidence could permit the conclusion that petitioner had not discovered and reasonably should not have discovered the withholding of that evidence at such a time. If petitioner's claims are not futile, they may not be disallowed based on their likelihood of success, however slim that likelihood may seem to the court when considering the motion to amend. We turn next to the question of what the court may consider in determining the amendments' futility.

B.  *Considering Judicially Noticeable Facts Under ORCP 23 A*

The state's argument here—that no discoverable evidence could possibly substantiate petitioner's claims—is based on extrinsic evidence offered by the state and attached to its response to petitioner's motion for leave to amend.

Thus, the remaining questions before us are whether the trial court was permitted to consider that extrinsic evidence, and, if so, whether that evidence supports the state's contention. The first question is, essentially, whether the court may consider judicially noticeable facts. *See* OEC 201(b).[4]

As with the above questions, the text and context of ORCP 23 A do not clearly resolve the issue, other than directing us to the broad requirements of "justice." At most, the text—"leave shall be freely given when justice so requires"—contains no constraining or limiting phrases that would restrict the court's ability to consider judicially noticeable facts. The context of ORCP 23 A, as noted above, suggests that the standards under that rule are likely different than those under other rules that were simultaneously promulgated with different wording, such as ORCP 21 A, ORCP 21 E, and ORCP 47 C. The Oregon Evidence Code, for its part, authorizes a court to take judicial notice "at any stage of the proceeding," OEC 201(f), suggesting that, absent some other proscription (as, for example, ORCP 21 A(2)(b), which limits the factual basis for certain motions to dismiss), the court may consider judicially noticeable facts. Our case law provides two additional clues, showing that other kinds of judicial notice are permissible under ORCP 23 A.

First, it is well settled that, in evaluating a motion for leave to amend, a court may look beyond the face of the proposed amended pleading to the record in the case before it and the procedural posture of the case at the time the motion is made. For example, in *Deep Photonics Corp.* and *C.O. Homes, LLC*, we recognized that the timing of an amendment could prejudice the nonmoving party. *Deep Photonics Corp.*, 368 Or at 301-02; *C.O. Homes, LLC*, 366 Or at 216. To determine whether such prejudice might occur, the court was required to consider not only the face of the

---

[4] OEC 201(b) provides:

"A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

"(1) Generally known within the territorial jurisdiction of the trial court; or

"(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

proposed amended pleading, but also the stage of the litigation at the time the motion was made. Similarly, in *Humbird v. McClendon*, 281 Or 83, 86-87, 573 P2d 1240 (1978), where the defendants sought midtrial to amend their answer from a general denial to an assertion of self-defense, we recognized that "[i]t is not an abuse of \*\*\* discretion to deny amendment particularly where, as here, the proffered amendment totally changed the defendants' theory of the case and counsel offered no reasonable justification for the delay in filing a proper pleading." In determining whether the amendment "totally changed the defendants' theory of the case," and what weight that consideration should receive, the court in *Humbird* necessarily looked beyond the face of the proposed amended pleading to the case as it was being litigated and the earlier pleadings by both parties. *Id.* at 86. Those examples do not conclusively determine how far a court can look beyond the face of the proposed amended pleadings, but they do indicate that there is no categorical bar on considering the record and proceedings in the particular case.

The second clue is that, in interpreting ORCP 23 A, this court has considered the relationship between proposed amended pleadings and existing law, which is judicially noticeable under OEC 202. Doing so may be necessary to determine whether the proposed amendments substantially change the legal basis for a claim. For example, in *C.O. Homes, LLC*, this court observed that the plaintiff's proposed amendments changed the statutory basis for its claim, from one landlord-tenant statute to another. 366 Or at 219-20. Thus, it has already been established that the court can take judicial notice of "[t]he decisional, constitutional and public statutory law of Oregon" when evaluating motions for leave to amend. OEC 202(1).

In light of the text and context of ORCP 23 A, the text of OEC 201 and OEC 202, and the case law, we conclude that the court may consider judicially noticeable facts in evaluating motions for leave to amend to the extent that such facts are relevant to determining whether justice requires that leave to amend be granted.

In so concluding, we emphasize that judicially noticeable facts are limited to those that are "not subject to

reasonable dispute," in that they are either "[g]enerally known within the territorial jurisdiction of the trial court," or are "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." OEC 201(b). The role of judicially noticed facts in evaluating a motion under ORCP 23 A is not to seek to determine whether a claim is likely or unlikely to succeed, or whether alleged facts are likely to be found to be true, but rather to determine whether there is an unavoidable bar to a claim such that that claim is futile.

Petitioner and *amicus curiae* Oregon Trial Lawyers Association disagree with that approach and argue that a court may only consider the pleadings on their face. Their arguments are unavailing.

Petitioner argues, relying primarily on *Sanok*, that the court may not consider such evidence and that it is instead required to accept the facts alleged in the proposed amended pleadings as true. Petitioner's reliance on *Sanok* for that proposition is misplaced. In *Sanok*, as discussed previously, the Tax Court dismissed a complaint because the court concluded that the alleged claims were beyond the Tax Court's limited jurisdiction. 294 Or at 686. This court disagreed, concluding that *some* of the claims were within the Tax Court's jurisdiction and that *those* claims should not have been dismissed. *Id.* at 701. *Sanok* did concern an amended complaint, and it did at one point refer to ORCP 23 A, but the subject of the appeal in that case was an order of dismissal for lack of jurisdiction under what is now ORCP 21 A(1)(a), not a denial of leave to amend under ORCP 23 A. *Id.* at 687. As this court has long held, "On review of a judgment on the pleadings, the appellate court accepts as true all well-pleaded allegations in the complaint." *Rowlett v. Fagan*, 358 Or 639, 649, 369 P3d 1132 (2016). *Sanok* applied that rule, accepting as true "the allegations of plaintiff's complaint in the [T]ax [C]ourt." 294 Or at 688. But the court did not review the Tax Court's decision regarding the amendment itself, so *Sanok* does not assist us in determining the applicable evidentiary standard here.[5]

_____

[5] *Sanok* is inapposite to this case with regard to petitioner's arguments about evidentiary standards under ORCP 23 A because the Tax Court in *Sanok* did not

Diverging slightly from petitioner, *amicus* asserts that the standard under ORCP 23 A "should not be more onerous than what is allowed under [*former*] ORCP 21 A(8) [(2017)]," under which a party may never offer evidence outside the pleadings. Although *amicus* discusses *former* ORCP 21 A(8) (2017) at some length, *amicus* does not explain why that standard should be applied under ORCP 23 A, which is a different rule, with different wording, and a different purpose.

Applying the legal analysis set out above regarding a trial court's consideration of matters beyond the pleading itself under ORCP 23 A, we conclude that the post-conviction court was within its discretion in considering the evidence presented by the state, to the extent that that evidence presented judicially noticeable facts, and in order to evaluate whether petitioner's claims were futile. We turn next to the question of whether, considering those facts, the post-conviction court abused its discretion in denying leave for petitioner to amend her complaint.

C.   *Whether the Amendments Here Are Futile*

As explained above, whether petitioner's claims could succeed depends on whether petitioner or her counsel discovered or reasonably should have discovered that the prosecutor had withheld the evidence at issue at a time when she could have added *Brady* claims based on that withheld evidence to her prior petition.[6] If discovery could

---

ultimately base its ruling on ORCP 23 A. As explained above, however, *Sanok* is instructive to the limited extent that this court's resolution of *Sanok*, directing the Tax Court to permit certain amendments, indicates what types of claims are eligible to be added through amendment (*i.e.*, nonfutile ones).

[6] The state separately argues that petitioner's proposed amendments are futile because petitioner failed to affirmatively plead facts establishing that her proposed claims could not reasonably have been raised in her original post-conviction proceeding, and that they therefore would not survive a motion to dismiss under *former* ORCP 21 A(8) (2017). The state maintains that petitioner was required to allege facts showing that "petitioner's counsel was unaware of the *Brady* evidence or unaware of the possibility that the prosecution had failed to disclose it," and that she failed to do so.

We conclude that the third amended petition was adequately pleaded, at least in the manner challenged by the state. In *Eklof I*, we held that, because the petition was successive, the petitioner had to plead "that the claim could not reasonably have been raised *** in the original action for post-conviction relief." 360 Or at 728. Here, the petition alleged, "Petitioner could not reasonably have raised

yield evidence indicating that petitioner or her counsel discovered the alleged withholding only after petitioner could have raised her claims in her prior post-conviction proceeding, then petitioner's claims are not futile. If the discovery of such evidence is possible, even if unlikely, then leave to amend should have been granted. On the other hand, if judicially noticeable facts—which, again, are only those "not subject to reasonable dispute" as that phrase is used in OEC 201(b)—conclusively show that post-conviction trial counsel *had* discovered the alleged withholding of evidence, then the claims would be futile because they would necessarily be barred by ORS 138.550(3), and the post-conviction court would have acted within its discretion in denying leave to amend. We therefore consider whether the arguments and judicially noticeable facts presented by the state show that petitioner's claims regarding trial witnesses Smith, Hope, and Distabile are unavoidably barred.

As to witness Smith, the allegedly withheld evidence includes potential testimony purporting to show that various judges, prosecutors, and a police chief believed that Smith had a reputation for dishonesty. The state presented a transcript showing that petitioner's prior post-conviction counsel stated during one hearing in 2001 that one judge, Judge Hargreaves, had "found Mr. Smith to be untruthful," that "three prior cases were overturned because of the tactics used by Mr. Smith," and that Mr. Smith's reputation was "a well-known fact in the courtroom." During another hearing, counsel stated that Judge Hargreaves thought Smith was

---

the above grounds for relief *** in her first post-conviction proceeding, because neither the Lane County District Attorney nor the Oregon Department of Justice disclosed the above described *** evidence to petitioner during any of those proceedings," and because the "evidence was not disclosed to petitioner during the two years following her judgment of conviction and sentence." Petitioner's pleadings therefore closely track our instructions in *Eklof I*, and, as the state notes, those allegations "could be construed to imply that *** [petitioner] lacked notice of the possibility that the prosecution had failed to disclose [the evidence] during her criminal trial." The state might later prove that petitioner or her counsel reasonably could have discovered that the prosecutor had possibly withheld such information at a time when petitioner reasonably could have raised her claims in her prior post-conviction proceeding, and if the state did so, the petition here would be barred under ORS 138.550(3). At this stage in the proceeding, however, the state only argues that construing petitioner's allegations in the above manner "irreconcilably conflicts with the judicially noticeable public record," and, to the extent explained below, we disagree.

known for being "essentially dishonest." Petitioner's trial memorandum in that proceeding further described Judge Hargreaves's view and asserted that Judge Hargreaves's opinion of Smith was "well-known in the community."

Those assertions indicate that, in 2001, petitioner's counsel believed that Judge Hargreaves had a negative view of Smith's honesty. We may and do take judicial notice of those statements, and, if petitioner's claims depended solely on Judge Hargreaves, we might conclude that petitioner's claims were futile. (Although courts may judicially notice the statements and representations made by counsel in a prior proceeding, the facts asserted therein, on the other hand, such as whether or not Judge Hargreaves actually had a negative view of Smith, are not judicially noticeable, nor are they material to the issues in this case.) Petitioner alleged, however, that evidence regarding the opinions of *other* judges, prosecutors, and a police chief was withheld in addition to the evidence regarding Judge Hargreaves. No evidence presented by the state indicates, by judicially noticeable facts, that petitioner or her counsel had discovered the alleged withholding of that additional evidence. Thus, evidence regarding those opinions could be discovered showing that petitioner and her counsel had not discovered and should not reasonably have discovered the alleged withholding of that other evidence.

As to witness Hope, the allegedly withheld evidence includes a warrant, allegedly to search Hope's home for evidence of various sex abuse crimes, a filed return allegedly indicating that police had seized evidence based on that warrant, and potential testimony indicating that Hope was under investigation for related crimes. The evidence allegedly withheld also includes a police report allegedly indicating that Hope told police a different story from the story he told as a witness at petitioner's trial and also allegedly indicating that Hope was a convicted felon under investigation for additional crimes. The state here presented evidence that, it argues, shows that petitioner's counsel, by the time of petitioner's federal habeas proceedings in 2006, was aware of the warrant and investigation of Hope, and that petitioner's habeas counsel stated that those facts "were revealed through discovery motions in Tiner's [prosecution in] 1999."

The fact that petitioner's habeas counsel in 2006 stated that certain evidence was "revealed" in 1999, however, does not conclusively demonstrate that petitioner or her counsel had discovered or reasonably should have discovered that that evidence was allegedly withheld at a time when petitioner could reasonably have raised that claim in her prior petition. Furthermore, although the fact that petitioner's habeas counsel stated in 2006 that the evidence was revealed in 1999 is not subject to reasonable dispute and is judicially noticeable, the different question of whether petitioner or her post-conviction counsel at the time had discovered or reasonably should have discovered the alleged withholding of that evidence in 1999 is subject to reasonable dispute and is not a judicially noticeable fact. Thus, evidence could be discovered showing that petitioner and her counsel had not discovered and reasonably should not have discovered the alleged withholding of that evidence during her first post-conviction trial proceeding.

With regard to witnesses Smith and Hope, discovery could reveal evidence indicating that petitioner and her counsel had not discovered and reasonably should not have discovered the alleged withholding of possible *Brady* evidence at issue here at a time when petitioner could reasonably have added claims based on that evidence to her prior petition. Without knowledge of that alleged *Brady* evidence or withholding, petitioner could not reasonably have raised those *Brady* claims in the prior post-conviction proceeding. Because those claims could not reasonably have been raised, they may come within the escape clause of ORS 138.550(3) and are not unavoidably barred by that statute, which was the sole ground the state argues that they were futile in this court. We therefore conclude that those proposed amendments were not futile and that, without the identification of any prejudice to the state that would weigh against amendment, justice required allowing those nonfutile claims to be raised. As a result, in the absence of any prejudice that would result from allowing the amendments, the post-conviction court abused its discretion in denying leave to amend to add those claims.

Petitioner's claims regarding witness Distabile are different. The allegedly withheld evidence regarding Distabile

that is relevant here was a letter from Distabile's attorney to petitioner's prosecutor purporting to offer Distabile's cooperation in the prosecution in exchange for transactional immunity for Distabile as to the victim's death. The record from petitioner's original post-conviction proceeding shows that petitioner offered that letter as an exhibit. Petitioner raised in that proceeding the possibility that that letter had been "kept from" petitioner's trial counsel. Therefore, it is a judicially noticeable fact that petitioner's counsel had discovered the Distabile letter and the possibility that it had been withheld. As a result, it is apparent from the pleadings and arguments here that petitioner reasonably could have raised a *Brady* claim based on that letter in her earlier post-conviction proceeding, and petitioner's claim in this case based on the Distabile letter is barred for that reason. Petitioner does not raise any additional arguments to the contrary. Because that claim is futile, the post-conviction court did not abuse its discretion in denying petitioner leave to amend her petition to add it.

In sum, we conclude that the claims regarding the state's alleged failure to turn over potentially exculpatory evidence related to witnesses Smith and Hope were not futile, but that the claim regarding witness Distabile was. Futility was the only ground for denying leave to amend that was supported by the state's arguments; the state did not identify prejudice caused by the amendment.[7] Absent a showing of prejudice, the lack of merit of proposed amended claims will only justify denial of leave to amend where the proposed amendments are truly futile. Thus, the

---

[7] Before the post-conviction court, the state did argue that the proposed amendments would add "new" claims and were "untimely." In general, those considerations are only relevant to the inquiry under ORCP 23 A to the extent that they prejudice the adverse party, such as by changing the nature of the claims being pleaded, limiting the amount of time the nonmoving party has to respond to the amended claims, or requiring additional discovery or delay. Here, however, the only "prejudice" identified by the state related to those considerations was that the amendments would "add to the burden of having to prove this case all over again." The burden of responding to new, nonfutile claims may impose some cost on the nonmoving party, but the mere requirement to respond to such an additional claim, without more, does not prejudice the ability of the nonmoving party to litigate those claims. In this case, as petitioner points out, the state was able to respond fully to the proposed amended claims in its objection to the motion for leave to amend. Thus, on this record, it does not appear that the state would have been prejudiced had the amendment been allowed.

post-conviction court here abused its discretion in denying petitioner leave to amend her complaint to add her claims based on witnesses Smith and Hope.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.