601

Argued and submitted August 1, 1994, respondent Hartford Fire Insurance Co.'s motion to dismiss allowed; affirmed; requests for sanctions denied February 1, 1995

Loren HANGGI,
on behalf of the
Oregon Public Employees Retirement Fund
and its beneficiaries,
*Appellant,*

*v.*

HARTFORD FIRE INSURANCE CO.,
The State of Oregon and
Oregon Public Employees Retirement Board,
*Respondents.*

(9303-01347; CA A81089 (Control))

Janice FITZKO
and Clarice M. Kirkland,
on behalf of the
Oregon Public Employees Retirement Fund,
and its beneficiaries,
*Appellants,*

*v.*

HARTFORD FIRE INSURANCE CO.,
Continental Insurance,
State of Oregon and
Oregon Public Employees Retirement Board,
*Respondents.*

(9303-01891; CA A81090)

Roy BURRIGHT,
Janice Fitzko and Clarice M. Kirkland,
on behalf of the
Oregon Public Employees Retirement Fund
and its beneficiaries,
*Appellants,*

*v.*

HARTFORD FIRE INSURANCE CO.,
Continental Insurance,
State of Oregon, and
Oregon Public Employees Retirement Board,
*Respondents.*

(9304-02154; CA A81091)

Loren HANGGI,
for the benefit of
the Oregon Public Employees Retirement Fund
and its beneficiaries,
*Appellant,*

*v.*

HARTFORD FIRE INSURANCE CO.,
Continental Insurance,
State of Oregon and
Public Employees Retirement Fund,
*Respondents.*

(93C-10934; CA A82132)
(Cases Consolidated)

889 P2d 365

Leslie L. Wellman and Jan Wyers argued the cause for appellants. With them on the briefs were Mark Edward Griffin, Griffin & McCandlish, William D. Brandt, Ferder, Ogdahl, Brandt & Casebeer and Wellman & Murray, P.C.

Jan D. Sokol argued the cause for respondents Hartford Fire Insurance Co. and Continental Insurance. With him on the briefs were H. Lee Cook and Stewart Sokol & Gray.

Rives Kistler, Assistant Attorney General, argued the cause for respondents State of Oregon and Oregon Public Employees Retirement Board. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

**HASELTON, J.**

Plaintiffs, in four consolidated appeals, seek reversal of judgments dismissing their complaints for failure to state a claim. ORCP 21A(8). Although the complaints pertain to different transactions, they are materially similar, with each alleging a battery of derivative claims based on alleged losses suffered by the Oregon Public Employees' Retirement Fund (the Fund), because of various allegedly imprudent investments of Fund monies. We affirm.

■ Plaintiffs are beneficiaries of the Fund, which is a statutory trust fund administered by the Oregon Public Employees' Retirement Board (OPERB) for the benefit of public employees and retirees.[1] ORS 237.001 *et seq*. The Oregon State Treasurer, as custodian of the Fund, directs its investments. ORS 237.251 *et seq*; ORS 293.701 *et seq*. At all times material to plaintiffs' claims, Tony Meeker was the Treasurer, and he, through subordinates, supervised Terry Canby, a real estate investment counselor for the Fund. Defendants Hartford Fire Insurance Co. (Hartford) and Continental Insurance (Continental) issued "public employee dishonesty" insurance coverage assuring the faithful performance of Meeker, Canby, and other employees of the State Treasury who managed Fund monies. Hartford provided primary coverage of at least $5 million,[2] and Continental provided excess coverage of $10 million.

In April 1991, the state was notified[3] that Canby and other Treasury employees had caused Fund assets to be invested in a variety of irregular real estate transactions, resulting in total losses of over $21 million. Ultimately, in March 1992, Canby pleaded guilty to one count of felony racketeering arising from his role in those investments.

---

[1] When reviewing the propriety of a judgment of dismissal pursuant to ORCP 21A(8), we consider as true the facts alleged in plaintiffs' complaints and all reasonable inferences that may be drawn therefrom. *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992).

[2] Plaintiffs allege that Hartford's policy limit is $10 million. However, the policy declaration sheet indicates that, at the times material to plaintiffs' claims, the policy limit was $5 million.

[3] The complaints do not disclose how the state was "notified" of the irregular transactions.

In September 1991, the state filed a proof of loss, based on those transactions, on the Hartford bond. However, as of February 1993, Hartford had not acted on that claim, and the state had not filed suit against Hartford or Continental. Plaintiffs' counsel became concerned that, unless the state acted promptly, a contractual limitations provision could bar any recovery under the bonds. Consequently, he contacted the state on February 23, 1993, to learn if it intended to sue on the bond, but he received no assurances.

In March and April 1993, fearing that the time for suing on the bond was about to expire, plaintiffs, "on behalf of the [Fund] and its beneficiaries," filed three actions in Multnomah County Circuit Court and one in Marion County Circuit Court. Although the complaints differed factually in that they pertained to different allegedly imprudent investments, their legal theories were similar. In each Multnomah County action, plaintiffs asserted a derivative claim for breach of fiduciary duty against the state, alleging that Treasury employees breached their duties by: (1) participating in the allegedly imprudent investments or by failing to police Fund investments adequately; and (2) failing to pursue claims against the Hartford and Continental bonds.[4] The Marion County complaint echoed those claims and further alleged that OPERB had breached its duties by failing to pursue claims against the state based on the allegedly improper conduct of Treasury personnel and by failing to pursue claims against the bonds.

In all four actions, plaintiffs also asserted claims against defendants Hartford and Continental, alleging an

---

[4] The breach of fiduciary duty allegations are pleaded as "Count I" of each of the three Multnomah County complaints and as the "First Claim for Relief" of the Marion County complaint. The First Claim for Relief of the Marion County pleadings includes three counts: "Count I (Imprudent Investment)"; "Count II (Failure to Pursue Claims Against State)"; and "Count III (Failure to Pursue Claims on Bond)."

In the Marion County pleadings only, plaintiffs also alleged a separate Second Claim for Relief for Breach of Contract against the state, alleging that various Treasury personnel had "breached their respective oaths of office." Plaintiffs, in appealing the Marion County judgment, do not assign error to the dismissal of that claim.

entitlement to recover, on the Fund's behalf, against the public employee fidelity bonds.[5]

Defendants moved to dismiss the Multnomah County complaints under ORCP 21A(8). The state relied primarily on two grounds: (1) Plaintiffs' claims were barred by non-compliance with the notice requirements of the Oregon Tort Claims Act, ORS 30.275; (2) Under *Frohnmayer v. SAIF*, 294 Or 570, 660 P2d 1061 (1983), plaintiffs could not assert claims on behalf of the Fund, including the claims against the Hartford and Continental bonds. Defendants Hartford and Continental echoed the state's reliance on *Frohnmayer v. SAIF, supra*, and further argued that, regardless of *Frohnmayer's* effect, plaintiffs could not maintain an action on the bonds, because the insurance contracts provided that only the state and its instrumentalities could sue to recover for losses under that coverage. The Multnomah County court granted defendants' motions to dismiss and denied plaintiffs' contemporaneous motions to amend their complaints. The court then entered separate judgments of dismissal in each of the three Multnomah County cases. Thereafter, defendants moved to dismiss the Marion County complaint, and the court granted that motion, adopting the Multnomah County rulings as its own. These appeals ensued.

In August 1994, after this court heard oral argument in the consolidated appeals, the state and defendant Hartford entered into a settlement by which, in exchange for $5 million, the state released Hartford from all claims the state had or might have based on the losses that underlie plaintiffs' complaints. Hartford subsequently moved to dismiss the appeals against it as moot. For ease of analysis, we address that motion first and then turn to the merits.

■ We conclude that settlement between Hartford and the state renders moot plaintiffs' appeals as to Hartford and, accordingly, grant its motion to dismiss. Because plaintiffs' only claims against the Hartford bond are derivative, *i.e.*, they are expressly asserted "on behalf of" the Fund, the state's

---

[5] Again, the format of the Multnomah County and Marion County pleadings differed somewhat. In each of the Multnomah County complaints, the action on the Hartford bond was pleaded as "Count II," and the action on the Continental bond was pleaded as "Count III." The Marion County pleadings combined the claims against the Hartford and Continental bonds as a single "Third Claim for Relief."

settlement on the Fund's behalf bars plaintiffs' recovery on the Hartford bond. Hartford has paid substantial consideration to the named insured on its bond; it is obliged to do no more.

■ The effect of the Hartford settlement on plaintiffs' claims against the state and OPERB for failing to pursue claims against the Hartford bond is less certain. Although the state did make a claim against that bond, and ultimately received payment on that claim, plaintiffs contend that the ultimate settlement would have been substantially greater if the state had prosecuted its claim more promptly and vigorously. The state and OPERB dispute the substance of plaintiffs' argument but acknowledge that it presents factual issues that cannot be determined on this record. Accordingly, we must assume that plaintiffs' breach of fiduciary duty claims pertaining to the Hartford bond are not moot, and we address the substance of those claims *infra*.[6]

We proceed to the merits and begin with plaintiffs' derivative claims against the state and OPERB. The trial courts dismissed those claims on the alternative grounds that: (1) plaintiffs failed to allege OTCA notice of claim; and (2) under *Frohnmayer v. SAIF, supra*, plaintiffs could not assert claims on behalf of the Fund. In so holding, the courts did not distinguish among plaintiffs' various specifications of breach of fiduciary duty.

On appeal, all parties agree that plaintiffs adequately pleaded OTCA notice with respect to their allegation that defendants had failed to pursue the bonds, but dispute the OTCA's application to plaintiffs' remaining claims. In particular, plaintiffs argue that their claims of breach of fiduciary duty do not allege a "tort" within the meaning of the OTCA and that, in any event, their pleadings sufficiently alleged OTCA notice. We disagree on both counts.

■ ORS 30.260(8) defines "tort" for OTCA purposes as:

> "[T]he breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or

---

[6] All parties agree that the Hartford settlement did not render moot the claims pertaining to the Continental bond.

persons for which the law provides a civil right of action for damages or for a protective remedy." (Emphasis supplied.)

Plaintiffs contend that a breach of a fiduciary duty is not a tort, because "[t]he claim for breach of fiduciary duties is based upon principles of trust law which have historically developed in courts of equity rather than the common law of torts." Whatever the merits of plaintiffs' description of the general development of trust law, it ignores the precise and controlling statutory definition: An action for breach of fiduciary duties is a "tort" for purposes of ORS 30.260(8) because fiduciary duties are "legal dut[ies] * * * imposed by law." *Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 831 P2d 7 (1992), is illustrative:

> "The parties have referred to plaintiff's second claim as a claim for 'breach of a fiduciary duty.' This is a correct appellation in the same sense that one would state a claim for 'breach of a physician's duty,' 'breach of a lawyer's duty,' or 'breach of a landlord's duty.' *In each case, the duty is one created by law, the duty is one that arises from the relationship between the parties, and the action is in the nature of an action on the case.*
>
> "The form of action for a claim against a fiduciary for breaching a duty of care arising from the relationship is not materially different from a claim against a physician, a lawyer, or an engineer for breaching a duty of care arising from such a relationship. Notwithstanding repeated references by this and other courts to a 'breach of a fiduciary duty,' the form of action is the same, and the theory of recovery — *breach of the duty of care that the law implies from the relationship* — is the same." 313 Or at 110 n 7. (Emphasis supplied.)

Thus, plaintiffs' claims[7] were subject to the OTCA, and, in particular, to ORS 30.275(2)(b), which provides that "notice of claim shall be given within * * * 180 days after the alleged loss or injury." Plaintiffs were obliged to plead notice sufficient to satisfy that requirement. *Urban Renewal Agency v. Lackey*, 275 Or 35, 40, 549 P2d 657 (1976); *Brinkley v.*

---

[7] Count Two of the First Claim for Relief of the Marion County complaint asserts, in conclusory fashion, that OPERB "breached its fiduciary and *contractual* duties" to the Fund. (Emphasis supplied.) Although a breach of contract is not a tort for OTCA purposes, ORS 30.260(8), the complaint does not allege any contract between OPERB and the Fund or its beneficiaries, much less the terms of such a contract.

*Oregon Health Sciences University,* 94 Or App 531, 537, 766 P2d 1045 (1988), *rev den* 307 Or 571 (1989).

■    The Multnomah County complaints are devoid of any allegations that plaintiffs served tort claims notice on the state and, thus, fail to plead OTCA notice. However, plaintiffs argue that the Marion County complaint, which states that plaintiffs "sent a tort claims notice to the state on March 30, 1993," sufficiently alleges OTCA notice, and that, if they had been permitted to amend their Multnomah County complaints, those complaints would have been similarly sufficient. We disagree.

Except for their "failure to pursue bond" allegations, plaintiffs' breach of fiduciary duty claims against the state pertain to conduct of Treasury personnel with respect to the alleged imprudent investments. Plaintiffs allege that those investments—the alleged "loss or injury" for OTCA notice purposes—occurred in 1991, two years before plaintiffs served OTCA notice on the state. Moreover, plaintiffs do not allege that they or the Fund, on whose behalf they were suing, discovered the facts supporting their derivative claim within 180 days of March 30, 1993. Consequently, those claims fail to allege sufficient OTCA notice and were properly dismissed.

Again, except for their "failure to pursue bond" allegations, plaintiffs' breach of fiduciary duty claims against OPERB are based on its failure to sue the state for the alleged negligence and misconduct of Treasury personnel. However, because plaintiffs failed to plead when, if ever, OPERB decided not to bring such an action, they necessarily failed to plead that they gave "notice of a claim * * * within * * * 180 days after the alleged injury." ORS 30.275(2)(b). Those claims were properly dismissed. *Urban Renewal Agency v. Lackey, supra,* 275 Or at 40; *Brinkley v. Oregon Health Sciences University, supra,* 94 Or App at 537.

■    Plaintiffs only remaining claims against the state and OPERB pertain to those defendants' failure to pursue claims against the Hartford and Continental bonds. As with all of their claims, plaintiffs allege that they are prosecuting those claims derivatively "on behalf of" the Fund and its beneficiaries. We conclude that, under the reasoning of

*Frohnmayer v. SAIF, supra,* plaintiffs cannot assert derivative claims on the Fund's behalf.

In *Frohnmayer v. SAIF, supra,* the court held that SAIF could not hire private counsel and prosecute litigation, which challenged the transfer of SAIF funds to the state general fund, without first seeking the Attorney General's permission. That holding rested on ORS 180.220, which provides:

"(1)   The Department of Justice shall have:

"(a)   General control and supervision of all civil actions and legal proceedings in which the State of Oregon may be a party or may be interested.

"(b)   Full charge and control of all the legal business of all departments, commissions and bureaus of the state, or of any office thereof, which requires the services of an attorney or counsel in order to protect the interests of the state.

"(2)   No state officer, board, commission, or the head of a department or institution of the state shall employ or be represented by any other counsel or attorney at law."

*See also* ORS 180.235 (describing Attorney General's authority to allow state officers and agencies to retain outside counsel).[8]

---

[8] ORS 180.235 provides:

"(1) Notwithstanding any provision of law to the contrary, whenever the Attorney General concludes that it is inappropriate and contrary to the public interest for the office of the Attorney General to concurrently represent more than one public officer or agency in a particular matter or class of matters in circumstances which would create or tend to create a conflict of interest on the part of the Attorney General, the Attorney General may authorize one or both of such officers or agencies to employ its own general or special counsel in the particular matter or class of matters and in related matters. Such authorization may be terminated by the Attorney General whenever the Attorney General determines that separate representation is no longer appropriate.

"(2) Any counsel so employed shall be a member of the Oregon State Bar and shall be paid a salary or other compensation out of the funds appropriated to such officer or agency.

"(3) In any matter in which the Attorney General has authorized employment of such counsel, any references to representation of such officer or agency by the Attorney General contained in any provision of law shall be deemed to refer to such counsel."

*Accord* ORS 180.140(15) (Attorney General may employ private counsel in particular cases).

This case differs from *Frohnmayer v. SAIF, supra,* in that, unlike SAIF, neither the Fund nor OPERB, as its trustee, brought this action. Instead, plaintiffs, who are private parties, have asserted derivative claims *on behalf of* the Fund and its beneficiaries without seeking the Attorney General's approval. Notwithstanding the derivative format, we believe *Frohnmayer v. SAIF, supra,* is controlling. Indeed, any other holding would permit ORS 180.220 and ORS 180.235 to be circumvented by the prosecution of derivative suits by private counsel "on behalf of" state entities. The Attorney General's omnibus and exclusive authority to represent the state and its agencies would, thus, be abrogated.

Plaintiffs argue, nevertheless, that *Alsea Veneer, Inc. v. State of Oregon,* 318 Or 33, 862 P2d 95 (1993), "Round 3" of the *Frohnmayer v. SAIF, supra,* litigation,[9] affirmatively authorizes their derivative action. There, a group of employers insured by SAIF sued the state and SAIF, seeking damages and equitable relief for the transfer of funds at issue in *Frohnmayer v. SAIF, supra.* The plaintiffs asserted two claims for equitable relief. The first alleged that plaintiffs had suffered individual injury from the transfer, including lost potential dividends and premium reductions, and sought injunctions requiring the state to return the transferred funds to SAIF and requiring SAIF to properly administer the money. The second claim, entitled "Derivative Action Against Defendants," alleged that SAIF was "unable or unwilling" to seek the return of the transferred funds. The trial court dismissed those claims on the ground that plaintiffs' legal remedies were adequate, and we affirmed that dismissal. The Supreme Court concluded that the plaintiffs' remedies were inadequate and reversed. In so holding, the court observed:

> "In a practical sense, this case is like a shareholder's derivative action against a corporation that refuses to act. SAIF allegedly is unwilling to make any claim against the state. At least two actions necessarily are involved in affording relief to plaintiffs. One is to get the $81 million back in SAIF's hands. The second is for the trial court to decree how

---

[9] Round 2 was *Eckles v. State of Oregon,* 306 Or 380, 760 P2d 846 (1988), an action brought by a SAIF insured in which the court held that the statutorily mandated transfer from SAIF to the state general fund effected an unconstitutional impairment of the contract between the state and employers insured by SAIF.

SAIF shall administer the fund with the $81 million in it. An equity court is better able to decide questions relating to the exercise of corporate discretion than is a jury. Indeed, this court has stated that equity can compel a corporation to declare a dividend. Only by ordering the return of the funds to SAIF, so that the court can decree an appropriate administration of the fund by SAIF, can full and complete relief be afforded to plaintiffs." 318 Or at 44. (Citations omitted.)

Unlike plaintiffs, we do not read those comments as sanctioning the prosecution of derivative suits on behalf of state entities without the Attorney General's approval. *Alsea Veneer* does not even refer to *Frohnmayer v. SAIF, supra*, except by way of chronological background, much less relate its analysis to the "derivative" claim. Nor did the court's reference to a shareholder's derivative action purport to approve the particular "derivative" claim in *Alsea Veneer*; the court merely analogized the relief the plaintiffs sought, including through their direct claim, to the relief that a shareholder would seek in a derivative action against a corporation. If the court had intended to endorse a derivative end-run around *Frohnmayer v. SAIF, supra*, it would have said so.

We thus conclude, as did the trial courts, that *Frohnmayer v. SAIF, supra,* compels the dismissal of plaintiffs' derivative claims against the state and OPERB for failure to seek recovery against the Hartford and Continental bonds. The same reasoning applies to, and requires the dismissal of, plaintiffs' only remaining claim, the derivative claim against defendant Continental on its excess bond.

Plaintiffs' other assignments of error are either obviated by the foregoing analysis or lack merit and warrant no further discussion. Finally, we deny Hartford's and Continental's requests for sanctions under ORS 20.105(1). *See Westfall v. Rust International*, 314 Or 553, 840 P2d 700 (1992). Given the difficult and novel issues presented by plaintiffs' appeals, that request is without merit.

Respondent Hartford Fire Insurance Co.'s motion to dismiss allowed; affirmed; requests for sanctions denied.