668                    January 28, 2026                    No. 38

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

ADVOCATES FOR SCHOOL TRUST LANDS;
Oregon Advocates for School Trust Lands;
April Diviney, individually and as guardian *ad litem* for
Bradley Reiter, a minor;
and Robin Ramsey, individually and as guardian *ad litem*
for Connor Ramsey, a minor,
*Plaintiffs-Appellants,*

*v.*

STATE OF OREGON;
State Land Board;
Department of State Lands; Board of Forestry;
Rob Wagner, as Senate president;
Dan Rayfield, as House speaker;
and Calvin Mukumoto, as state forester,
*Defendants-Respondents.*

Coos County Circuit Court
23CV39056; A184055

Andrew E. Combs, Judge.

Argued and submitted April 11, 2025, Corvallis High
School, Corvallis.

Natalie Scott argued the cause for appellants. Also on
the briefs was Scott Law Group LLP.

Carson L. Whitehead, Assistant Attorney General,
argued the cause for respondents. Also on the brief were
Ellen F. Rosenblum, Attorney General, and Benjamin
Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce,
Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Plaintiffs, who are two schoolchildren, two parents of schoolchildren, and two nonprofit organizations, filed a complaint asserting four claims against the State of Oregon, the State Land Board, the Department of State Lands, the Board of Forestry, the President of the Oregon State Senate, the Speaker of the Oregon House of Representatives, and the state forester, seeking declaratory and injunctive relief. Plaintiffs' first two claims were brought only against the Senate president and House speaker, and they related to the legislature's compliance with Article VIII, section 8, of the Oregon Constitution, which requires the legislature to appropriate sufficient funds "to ensure that the state's system of public education meets quality goals established by law" and to "publish a report that either demonstrates the appropriation is sufficient, or identifies the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those goals." Plaintiffs' third and fourth claims were brought against all defendants, and they asserted that all defendants were required by law to manage the common school lands—certain forest lands that are or were part of or derived from lands granted by the federal government to the State of Oregon for the support of public schools—in a way that would maximize school funding. *See generally Cascadia Wildlands v. Dept. of State Lands*, 365 Or 750, 752-56, 452 P3d 938 (2019) (setting out history of common school lands). They asserted that the enactment of a constitutional amendment, two statutes, and various administrative rules violated those duties. They also alleged Elliot State Forest was sold for less than its fair market value, violating those same duties.

Defendants moved under ORCP 21 A(1)(a) for dismissal of plaintiffs' claims for lack of subject matter jurisdiction based on a variety of doctrines, which we discuss below. The trial court agreed that it lacked subject matter jurisdiction over all of plaintiffs' claims. As relevant to this appeal, it concluded that plaintiffs' first claim was barred by legislative immunity and that plaintiffs' third claim was barred because it was subject to the Oregon Tort Claims Act (OTCA) and plaintiffs had not pleaded that they had given

notice to defendants within 180 days after the challenged acts, as required under the OTCA.

Based on that reasoning, as well as other reasons for dismissing plaintiffs' second and fourth claims, in which they sought injunctions and which are not at issue on appeal, the court dismissed the complaint in its entirety with prejudice, rejecting plaintiffs' request to amend the complaint on the ground that it would have been futile. On appeal, plaintiffs argue that the court erred by not allowing them to amend the complaint to plead the first claim against the state, rather than the Senate president and speaker of the House. Plaintiffs also contend that the court erred in concluding that their third claim was subject to the OTCA and that, if it was, they gave timely notice. Finally, plaintiffs argue that the court should have allowed them to amend their complaint in other ways.

In response, defendants raise preservation challenges and defend the trial court's reasoning. They also assert several other reasons that, in their view, the trial court lacked subject matter jurisdiction.

As explained below, we conclude that the trial court was incorrect that plaintiffs' proposed amendments to their first claim would have been futile and therefore abused its discretion in rejecting their request to amend. As to the third claim, we conclude that the trial court erred in concluding that that claim was subject to the OTCA, and, consequently, in dismissing the third claim. We reverse and remand for further proceedings.

## I.  FIRST CLAIM

In their first claim, which was alleged only against the President of the Oregon State Senate and the Speaker of the Oregon House of Representatives, plaintiffs sought declarations that (1) "[b]oth the 2021 and 2023 Legislative Assemblies failed to appropriate a sum of money sufficient to ensure, for their respective bienniums, that the state's system of K-12 public education would meet the quality goals established by law"; (2) "[n]either the 2021 nor 2023 Legislative Assembly voted to approve a report that either demonstrated the appropriation was sufficient or identified

the reasons for the insufficiency and its extent as required by Article VIII, section 8, of the Oregon Constitution"; and (3) "ORS 171.857 is unconstitutional."

## A.   *Dismissal of First Claim*

Before the trial court, plaintiffs conceded that, because individual legislators are immune from suit for their legislative actions, they could not bring any claims against the Senate president and the speaker of the House. In light of that concession, the court dismissed the first claim. On appeal, plaintiffs challenge that dismissal, although they still concede that the first claim, as pleaded, was barred by legislative immunity. Given the concession, the court did not err in dismissing plaintiffs' first claim.

## B.   *Leave to Amend the Complaint*

Next we consider plaintiffs' assertion that, after dismissing plaintiffs' first claim, the court incorrectly denied plaintiffs' request to amend the complaint.[1] That question is controlled by ORCP 21 A(2)(c), which states, "If the court grants a motion to dismiss, the court may enter judgment in favor of the moving party or grant leave to file an amended complaint." Our review is for abuse of discretion. *Eklof v. Persson*, 369 Or 531, 541, 508 P3d 468 (2022); *Alfieri v. Solomon*, 358 Or 383, 412, 365 P3d 99 (2015).

After the grant of a motion to dismiss, in choosing between entering judgment in favor of the moving party or granting leave to file an amended complaint, the court must "apply[] the same principles that guide the amendment of pleadings after a responsive pleading has been served." *Alfieri*, 358 Or at 412. "In such a case, 'leave shall be freely given when justice so requires.'" *Id.* (quoting ORCP 23 A).

---

[1] We reject without detailed discussion defendants' assertions that plaintiffs failed to preserve their argument about amending the complaint or invited any error. Before the trial court, plaintiffs contended that their first claim, if pleaded against the state, would not be barred by legislative immunity and that the court should allow them to amend the complaint to make that change, among others. Those arguments are the same ones that they make on appeal; their appellate arguments are preserved. Further, contrary to defendants' argument, plaintiffs did not invite any error when they recognized that it was possible that the court would dismiss outright; while they acknowledged that reality, they argued that the court should not do that because it would not be consistent with the Oregon Rules of Civil Procedure.

The Supreme Court has "interpreted that standard to mean that leave to amend should be granted unless allowing the amendment would be unfairly prejudicial to the nonmoving party." *Larsen v. Selmet, Inc.*, 371 Or 457, 466, 537 P3d 920 (2023); *see also Eklof*, 369 Or at 538 (approving of the parties' agreement that "the key inquiry driving the exercise of discretion under ORCP 23 A is the extent of prejudice to the adverse party"). In this case, defendants have not asserted that they would be prejudiced by the filing of an amended complaint.

However, a court is not required to allow an amendment to raise a futile claim. *Eklof*, 369 Or at 542. "[A] futile claim is one that could not prevail on the merits due to some failing in the pleadings or some unavoidable bar or obstacle." *Id.* at 543-44. In this case, the court concluded that the first claim, as plaintiffs proposed to amend it, would be futile because it would be barred by legislative immunity even if it were brought against the state, as plaintiffs proposed.

Article IV, section 1(1), of the Oregon Constitution vests "[t]he legislative power of the state, except for the initiative and referendum powers reserved to the people," "in a Legislative Assembly, consisting of a Senate and a House of Representatives." Article IV, section 9, of the Oregon Constitution provides several protections for the members of the Legislative Assembly:

> "Senators and Representatives in all cases, except for treason, felony, or breaches of the peace, shall be privileged from arrest during the session of the Legislative Assembly, and in going to and returning from the same; and shall not be subject to any civil process during the session of the Legislative Assembly, nor during the fifteen days next before the commencement thereof: Nor shall a member for words uttered in debate in either house, be questioned in any other place."

The Supreme Court has explained that Article IV, section 9, has two purposes: It "allows legislators to perform their legislative functions without being interrupted or distracted by arrest, civil process, or other questioning" and also "allows legislators to perform their legislative functions without fear of retribution in the form of 'be[ing] questioned

in any other place' by either another branch of government or the public." *State v. Babson*, 355 Or 383, 419, 326 P3d 559 (2014) (quoting Art IV, § 9). By its terms and in the Supreme Court's description of its purpose, Article IV, section 9, protects legislators, in whom, as the members of the Legislative Assembly, the state's legislative powers are vested.

The trial court in this case concluded that, in addition to providing personal protections for legislators, Article IV, section 9, also protects the state from declaratory judgment claims about the constitutionality of legislative actions—specifically, the constitutionality of appropriations (the first declaration that plaintiffs sought) and the enactment of statutes (the second and third declarations that plaintiffs sought).

No Oregon case has extended legislative immunity beyond "member[s]" of the Legislative Assembly, Art IV, § 9—who are the only subjects of the constitutional text and, according to Article IV, section 1, the holders of the legislative power of the state. The United States Supreme Court has held that the immunity conferred by the similarly worded federal speech and debate clause[2] extends to legislative aides, explaining that, in contemporary circumstances, "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos." *Gravel v. United States*, 408 US 606, 616-17, 92 S Ct 2614, 33 L Ed 2d 583 (1972). The same is true of the Chief Counsel to a legislative committee. *Eastland v. U.S. Servicemen's Fund*, 421 US 491, 507, 95 S Ct 1813, 44 L Ed 2d 324 (1975) ("We draw no distinction between the

---

[2] The first clause of Article I, section 6, of the United States Constitution provides:

"The Senators and Representatives shall receive a Compensation for their Services, to be ascertained by Law, and paid out of the Treasury of the United States. They shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same; and for any Speech or Debate in either House, they shall not be questioned in any other Place."

Our Supreme Court has explained that, "[a]lthough federal cases decided after the Oregon Constitution was adopted are not controlling authority in our interpretation of Article IV, section 9, because of the similar wording and similar origins of the federal Speech or Debate Clause, federal cases provide a useful perspective." *Babson*, 355 Or at 419 n 10.

Members and the Chief Counsel."). As Justice Marshall has explained in the context of the federal clause, "the protection of the Speech or Debate Clause is personal. It extends to Members and their counsel acting in a legislative capacity; it does not preclude judicial review of their decisions in an appropriate case, whether they take the form of legislation or a subpoena." *Eastland*, 421 US at 515 (Marshall, J., concurring).

Below, defendants argued that plaintiffs' first claim would be barred by legislative immunity even if it were brought against the state because the claim was "about legislative acts, legislative functions, and the Court cannot issue a ruling on those *** functions." As the court summarized defendants' argument, and as defendants agreed, "if the only acts are legislative, and if you sue the State of Oregon *** and say, well, who did the act? Well, the legislature did the act, so therefore, why wouldn't legislative immunity apply to this action of the State of Oregon?"

Under that reasoning, legislative immunity would preclude any declaration about the constitutionality of any legislative enactment: Because enactment of any statute requires an act of the legislature—a legislative function—no court would be able to "issue a ruling" on the legality of the legislation or of its passage. That understanding of legislative immunity is implausible. *See generally Pendleton School Dist. v. State of Oregon*, 345 Or 596, 610, 200 P3d 133 (2009) ("[T]he courts may grant a declaratory judgment that the legislature failed to fully fund the public school system, if that is the case."); *id.* at 609 ("In this particular case [where the plaintiffs sought declarations that the legislature has an obligation, under Article VIII, section 8, to appropriate sufficient funds to ensure that the public education system meets quality goals and that, for the 2005-07 biennium, the legislature had failed to do so], we are mindful of our obligation to declare what the law is." (Citing *Marbury v. Madison*, 5 US (1 Cranch) 137, 177, 2 L Ed 60 (1803) (Marshall, C. J.) ("It is, emphatically, the province and duty of the judicial department to say what the law is.".)).

On appeal, defendants present a somewhat more nuanced argument, contending that, because ORS 171.857

prescribes the creation and contents of a legislative report—the report required by Article VIII, section 8—the state should be immune from any challenge to that statute because it addresses an area particularly within the legislature's sphere: It prescribes how the legislature will comply with its constitutional obligations. We disagree that the subject of a statute affects whether legislative immunity from an action challenging its constitutionality should extend to the state. Rather, we agree with Justice Marshall's assessment of the nearly identical wording of the federal Speech and Debate Clause: The constitutional protection "is personal," that is, "[i]t does not preclude judicial review of [legislators'] decisions in an appropriate case." *Eastland*, 421 US at 515 (Marshall, J., concurring). The clause shields *legislators* from being questioned about their actions; it does not shield their actions from courts' scrutiny. *Accord Babson*, 355 Or at 419 (explaining that Article IV, section 9, "*allows legislators* to perform their legislative functions" without interruption, distraction, or fear of retribution (emphasis added)).

We therefore disagree with the trial court's conclusion that plaintiffs' proposed amendment would be futile. Plaintiffs' first claim, if brought against the state, would not be barred by legislative immunity.

Defendants also advance two other grounds on which they ask us to affirm if we conclude that the trial court was mistaken regarding legislative immunity. First, they contend that we should affirm on the theory that plaintiffs' amended claim will be barred by separation of powers principles, because a declaration regarding the legislature's compliance with its obligations under Article VIII, section 8, would improperly usurp and intrude on the power of the legislature. *But see generally Pendleton School Dist.*, 345 Or at 610 ("The courts may grant a declaratory judgment that the legislature failed to fully fund the public school system [as required by Article VIII, section 8], if that is the case."). That argument was not raised below, and defendants do not explain why it is appropriate for us to address it for the first time on appeal.[3] Accordingly, we decline to do so.

---

[3] Defendants did raise an argument based on separation of powers below, but it was specific to plaintiffs' requests for injunctive relief, which appeared in their

*See Sherertz v. Brownstein, Rask*, 314 Or App 331, 341, 498 P3d 850, 857 (2021), *rev den*, 369 Or 338 (2022) (discussing *Outdoor Media Dimensions, Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001)).

Second, defendants assert that we should affirm on the alternative ground, which was raised below but which the trial court did not reach, that plaintiffs lack standing. Given the procedural posture of the first claim—the trial court properly dismissed it and, because plaintiffs have not yet had an opportunity to file an amended pleading, there is no pleading currently at issue—we conclude that standing is more appropriately addressed by the trial court after plaintiffs file an amended complaint.

We conclude that the court abused its discretion in rejecting plaintiffs' request to amend their complaint. We therefore reverse and remand for further proceedings.

## II. THIRD CLAIM

We turn to plaintiffs' third claim, in which they sought the following declarations:

"(i)  The school lands and funds accepted at statehood as a condition of statehood created an irrevocable trust to which trust principles apply;

"(ii)  Defendants, and each of them, are obliged to manage the Common School Fund and Common School Lands as trustees and fiduciaries under the Oregon Constitution;

"(iii)  the Common School Fund shall be separate, irreducible, and applied solely for the support and maintenance of public schools as provided in Article VIII, section 2, of the originally enacted Oregon Constitution and conflicting language in current Article VIII, section 5, (added by Ballot Measure 1 (1968)) is unconstitutional;

"(iv)  the Oregon Legislature [through the Senate president and house speaker] breached its statutory duty to the Common School Fund [by enacting and amending ORS 530.490, and SB 1546 (2022)];

"(v)  ORS 530.490 is unconstitutional;

---

second and fourth claims. The court dismissed those claims, and they are not at issue on appeal.

"(vi)   SB 1546 [(2022)] is unconstitutional;

"(vii)   Defendants Board of Forestry and the State Forester breached their statutory duties with respect to the Common School Fund [by 'enacting onerous regulations' restricting harvesting and other activities in the Elliot State Forest 'resulting in loss of over $285 million to the Common School Fund' from 2001 to 2016 and '[b]y failing and refusing to permit harvesting in greater volume' on the common school lands];

"(viii)   Defendants State, [Department of State Lands], and [State Land Board] above, and each of them, breached their fiduciary duties with respect to the Common School Fund [by, in summary, not allowing harvesting in the Elliot State Forest since 2016, paying expenses of the forest from the common school fund in the absence of income from the forest, selling the forest for less than its fair market value, and directing payment for the forest from general funds and bonds, to the detriment of taxpayers];

"(ix)   The action of Defendant [State Land Board] to approve the sale of the Elliott State Forest to the Elliott State Research Forest Authority is void and the transfer is null and void."

As we understand the trial court's reasoning, it concluded that the request for those declarations constituted a claim for a "tort" within the meaning of ORS 30.260(8), and, for that reason, dismissed the claim because the complaint did not allege that defendants received timely notice of the claim. *See* ORS 30.275 (tort claim notice requirements). The court did not address plaintiffs' alternative contention that, if the claim was a tort claim, they had given timely notice. And it noted that, in any event, the fourth declaration that plaintiffs sought, against the Senate president and House speaker, was barred by legislative immunity.[4]

On appeal, plaintiffs contend that the court erred in dismissing their third claim. They do not challenge the court's last conclusion, regarding legislative immunity; they concede that their fourth requested declaration is barred.

_____

[4] The court also indicated that, in its view, plaintiffs' claim depended entirely on their view that Ballot Measure 1 (1968) was unconstitutional, but that the complaint did not "adequately state" why it was unconstitutional. Defendants appear to contend, and we agree, that the court's comments on that topic did not amount to an alternative ruling.

However, they argue that their third claim is not subject to the OTCA and, alternatively, if it is, that defendants received timely notice of their claim. Defendants defend the trial court's ruling and contend that, even if the court erred, we should nonetheless affirm on the alternative basis that plaintiffs lack standing to bring the third claim.

A. *OTCA*

ORS 30.260(8) defines "tort" for purposes of the OTCA. It provides as follows:

> "'Tort' means the breach of a legal duty that is imposed by law, other than a duty arising from contract or quasi-contract, the breach of which results in injury to a specific person or persons for which the law provides a civil right of action for damages or for a protective remedy."

The parties' arguments raise the question of whether, under a proper understanding of that statute, plaintiffs' third claim alleges a tort or torts.[5]

We begin by noting that the majority of plaintiffs' requested declarations raise challenges to lawmaking by public officials. Specifically, plaintiffs seek declarations of the law regarding the school trust lands and challenge the enactment of Article VIII, section 5, of the Oregon Constitution; ORS 530.490; and SB 1546, and they challenge the State Land Board's enactment of "onerous" regulations restricting logging in the Elliott State Forest.[6]

Defendants point out that plaintiffs allege that defendants are subject to fiduciary duties. In defendants' view, with which the trial court agreed, that fact makes the third claim equivalent to a claim for breach of fiduciary duty, which we have held is a claim subject to the OTCA. *Hanggi v. Hartford Fire Ins. Co.*, 132 Or App 601, 608, 889 P2d 365 (1995), *rev dismissed*, 322 Or 573 (1996) (claims alleging breach of fiduciary duty based on investment-related acts

---

[5] As we will explain, we conclude that the statutory interpretation question is answered by the applicable case law. No one has proffered, and we therefore have not considered, legislative history.

[6] In the last two requested declarations, plaintiffs challenge some actions of the State Land Board that may not constitute lawmaking, which, as we will explain, is significant regarding application of the OTCA. We address those declarations below, 346 Or App at 684 n 9.

by employees of state treasury, resulting in losses to a statutory trust fund because of imprudent investments, were subject to the OTCA).

Although it is possible to characterize the third claim in this case as being one for breach of fiduciary duty, we do not find that characterization dispositive. The only fiduciary duties at issue here are alleged to arise from the Oregon Constitution and the Oregon Admission Act passed by Congress in 1859, and plaintiffs allege that defendants breached those duties by enacting laws and administrative rules that are allegedly inconsistent with those duties. In this context, the duties at issue are part of the body of law governing the lawmaking process that, as public officials and entities, defendants must follow. The fact the alleged breaches can be described in a way that mirrors a claim for breach of fiduciary duty does not seem to us to answer the question.

We conclude that the outcome here is governed by the Supreme Court's holding in *Comcast of Oregon II, Inc. v. City of Eugene*, 346 Or 238, 250, 209 P3d 800 (2009) (*Comcast*), that "a public body's act of adopting a law or rule in violation of an applicable procedural or substantive requirement is not a tort under ORS 30.260(8)." In that case, Comcast alleged, among other things, a declaratory judgment claim based on two administrative orders in which the city had adopted permit-fee schedules for utility work. 346 Or at 241-42. Comcast sought a declaration that the two orders had been adopted without compliance with a city code provision that required consideration of permit fees in other jurisdictions. *Id.* at 242.

The trial court concluded that all of Comcast's claims were subject to the OTCA and granted summary judgment for the city. *Id.* at 244. On appeal, we held that the declaratory judgment claim did not require notice under the OTCA regardless of whether it met the definition of "tort" in ORS 30.260(8) because claims "alleging the invalidity of government enactments" had never been barred by sovereign immunity and so, as we understood a previous Supreme Court case, were not subject to the OTCA at all. *Id.* at 245 (describing Court of Appeals reasoning); *see, e.g.*, *Hanson v. Mosser*, 247 Or 1, 7, 427 P2d 97 (1967), *overruled on other*

*grounds by Smith v. Cooper*, 256 Or 485, 475 P2d 78 (1970) ("[A]cts done by officials of the state without authority or in excess or abuse of authority are done without the sanction of the state and may be enjoined."). Thus, we reversed the trial court's grant of summary judgment to the city. 346 Or at 245.

On review, the Supreme Court disagreed with our understanding of the case we relied on. It held that all claims that fall within the OTCA's definition of "tort" are subject to the OTCA and require notice, regardless of whether they were barred by sovereign immunity before enactment of the OTCA. *Id.* at 246-48.

Then the court turned to whether the declaratory judgment claim was a "tort" claim within the meaning of the OTCA. It explained that the city argued that the declaratory judgment claim alleged a tort within the meaning of ORS 30.260(8) "because it asserted a breach of a legal duty (the adoption of the [disputed] orders in violation of [city code provisions]); it alleged that Comcast suffered a resulting injury (payment of excessive permit fees); and Comcast sought a protective remedy (a declaratory judgment)." *Id.* at 249.

The court noted that, when the city adopted the order at issue,[7] which, again, set permit fees for utility work, it was "engaged in a species of lawmaking." *Id.* It explained that a public body's lawmaking process is governed by law from a variety of sources, including the body's own procedural and substantive rules; procedural and substantive statutory requirements that govern the body's lawmaking authority; and "applicable limits on its authority that derive from procedural or substantive requirements expressed in the state and federal constitutions." *Id.*

The court explained that "[a] violation of any of those lawmaking requirements can lead to a legal challenge in court asserting that the adopted law is invalid in whole or in part." *Id.* In such a legal challenge, "the court's inquiry

---

[7] The court explained that one of the two orders had been adopted within 180 days of the filing of the complaint, so no tort claim notice was necessary for that order regardless of whether it fell within the OTCA. *Id.* at 245. Consequently, it addressed only one of the orders in its analysis.

focuses on whether the public body, during the lawmaking process, complied with pertinent procedural and substantive requirements for lawmaking, including any limitations on its legal authority to enact the law in question." *Id.*

The court further explained that, notwithstanding that such a legal challenge can be conceptualized as alleging that "the public body breached a legal duty imposed by law"—the duty to make law consistently with the applicable legal and substantive requirements—and that the act of lawmaking could be a *component* of a tort claim that otherwise satisfied the definition in ORS 30.260(8). Nevertheless, the court held, "a public body's act of adopting a law or rule in violation of an applicable procedural or substantive requirement is not a tort under ORS 30.260(8)." *Id.* at 250. "[E]nforcement of an unauthorized law or rule" may be a tort, but the enactment of a law or rule is not. *Id.* Applying that principle, the court explained that, when Comcast sought a declaration that the two orders were adopted in violation of the city code, it "did not claim that the city was liable for a tort" within the meaning of ORS 30.260(8). *Id.*

Defendants contend that the holding of *Comcast* does not apply to this case because of a footnote in the opinion. In announcing its holding, discussed above, the court said that the reason that the adoption of a law or rule in violation of a procedural or substantive requirement is not a tort is "because the law provides no damages remedy, or other protective remedy, for a public body's act of adopting a law or rule allegedly in violation of an applicable procedural or substantive requirement." *Id.* In a footnote attached to a later summary of its holding, the court provided the following comment:

> "Our conclusion answers the question presented by this case, but it may not exhaust the interpretive possibilities regarding the applicability of ORS 30.260(8) to declaratory judgment proceedings under ORS 28.010 to 28.160. For example, we leave for another day the question whether the legislature, in granting authority to the courts in ORS 28.010 to 'declare rights, status, and other legal relations, whether or not further relief is or could be claimed[,]' has

'provide[d] a civil right of action for damages or for a protective remedy []' under ORS 30.260(8)."

*Id.* at 251 n 13. Defendants contend that that footnote means that *Comcast* leaves open the question whether a claim, like the one at issue here, seeking declarations that the enactment of laws and rules was invalid is a tort within the meaning of ORS 30.260(8).

Although the court's intention in including that footnote in *Comcast* is not entirely clear to us, we do not understand it to vitiate the court's express holding that "a public body's act of adopting a law or rule in violation of an applicable procedural or substantive requirement is not a tort under ORS 30.260(8)." *Id.* at 250. It is well established that, "[i]n construing a statute, [the Supreme Court] is responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). If we understand the footnote to suggest, as defendants contend, that the Uniform Declaratory Judgments Act creates "'a civil right of action for damages or for a protective remedy []' under ORS 30.260(8)," then, directly to the contrary of the court's holding in *Comcast*, "a public body's act of adopting a law or rule in violation of an applicable procedural or substantive requirement" *would* be "a tort under ORS 30.260(8)" because the law would provide a protective remedy—a declaratory judgment—"for a public body's act of adopting a law or rule allegedly in violation of an applicable procedural or substantive requirement." *Comcast*, 346 Or at 250. Perhaps the court intended to note that possibility for its own future consideration. However, until it undertakes that consideration, we understand ourselves to be bound by its express holding that a public body's act of adopting a law or rule in violation of a procedural or substantive requirement is not a tort under ORS 30.260(8).[8] That is at least arguably consistent with

---

[8] It appears to us that the court's conclusion in *Comcast* could be supported in a way somewhat different from the way the court ultimately articulated it—based on the recognition that a public body's invalid adoption of a law or rule does not, in and of itself, cause injury to "a specific person or persons." That is, although government officials' failures to comply with the law may ultimately affect particular parties in particular ways, government officials' breach of their duty to comply with the law may actually "result[] in injury to" the public at large, rather than "a specific person or persons." ORS 30.260(8).

the pre-OTCA situation, in which declaratory-judgment claims challenging the validity of government officials' acts were not barred by sovereign immunity, *Hanson*, 247 Or at 7, and it avoids the untenable possibility that a statute, for example, could be unconstitutional and yet unchallengeable by affected parties through a declaratory-judgment action because they did not give tort-claim notice within 180 days after its enactment.

In light of our conclusion that *Comcast* controls here, we also disagree with defendants that this case is controlled by *Barns v. City of Eugene*, 183 Or App 471, 52 P3d 1094 (2002), a Court of Appeals case decided seven years before the Supreme Court decided *Comcast*. In *Barns*, we held that the term "protective remedy" in ORS 30.260(8) refers to all equitable relief, including declaratory-judgment claims, with the result that, "[u]nder ORS 30.275(1) and ORS 30.260(8), a plaintiff bringing a claim against a public body for either equitable or monetary relief must give timely tort claim notice." 183 Or App at 474-75. We made no distinction between declaratory-judgment claims based on lawmaking and other declaratory-judgment claims.

If the Supreme Court had agreed with our reasoning in *Barns*—that any injury for which a declaratory-judgment claim is available is one for "which the law provides a civil right of action * * * for a protective remedy," ORS 30.260(8)— then the court would have reached the opposite result in *Comcast*. But, as explained above, in *Comcast* the court held that "a public body's act of adopting a law or rule in violation of an applicable procedural or substantive requirement is not a tort under ORS 30.260(8)." 346 Or at 250. We thus conclude that *Barns* is no longer good law with respect to declaratory-judgment claims that present challenges to lawmaking. The trial court erred in concluding that plaintiffs' third claim was subject to the OTCA.[9]

---

[9] As noted above, 346 Or App at 679 n 6, in the last two requested declarations, plaintiffs challenge some actions of the State Land Board that may not constitute lawmaking. Under these circumstances—where the various requested declarations go to different topics—we conclude that the inclusion in the same claim of requests for declarations challenging some state actions that may not constitute lawmaking does not make the claim, as a whole, into one for a tort. On remand, unless an amended complaint makes the issue moot, the parties and

B.   *Standing*

        As an alternative basis for affirmance, defendants contend that plaintiffs lack standing. As explained below, we conclude that the schoolchildren plaintiffs have standing to bring the third claim. In light of that conclusion, we need not consider whether other plaintiffs also have standing. *MacPherson v. DAS*, 340 Or 117, 123-24, 130 P3d 308 (2006) ("To establish standing under ORS 28.020 in a case in which there are multiple plaintiffs, only one plaintiff must show some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or validity of a law." (Internal quotation marks omitted.)).

        In considering a motion to dismiss under ORCP 21, we, like trial courts, generally assume the truth of the facts alleged in the complaint and determine whether, as a matter of law, those facts are sufficient to withstand whatever defense is raised in the motion. *See, e.g.*, *Hood River Valley v. Board of Cty. Commissioners*, 193 Or App 485, 487, 91 P3d 748 (2004) (so explaining). However, for certain defenses, including lack of subject matter jurisdiction, ORCP 21 A(2) (b) provides for courts to consider materials outside the pleadings at the motion-to-dismiss stage:

> "If *** the facts constituting the asserted defenses do not appear on the face of the pleading and matters outside the pleading (including affidavits, declarations, and other evidence) are presented to the court, all parties will be given a reasonable opportunity to present affidavits, declarations, and other evidence, and the court may determine the existence or nonexistence of the facts supporting the asserted defenses or may defer any determination until further discovery or until trial on the merits."

Under that standard, we have explained that "the trial court may decide disputed jurisdictional facts based on evidence submitted by the parties."[10] *Munson v. Valley Energy Investment Fund*, 264 Or App 679, 695, 333 P3d 1102 (2014).

___

the court should address whether the actions that are the subject of the last two requested declarations constitute lawmaking.

    [10]  In 2022, ORCP 21 A was reorganized, resulting in different numbering of the various provisions of the rule, but the substance of the subsections relevant to our analysis was not changed. *See, e.g.*, *Stone v. Witt*, 331 Or App 722, 729 n 5, 548 P3d 497 (2024), *aff'd*, 374 Or 524, ___ P3d ___ (2025) (noting renumbering).

However, "the court may not, at that stage, decide disputed facts that go to the merits of the underlying claim because to do so would deprive a party of its entitlement to a trial 'on disputed questions of material fact.'" *Id.* (quoting *Black v. Arizala*, 337 Or 250, 265, 95 P3d 1109 (2004)).

In this case, in moving to dismiss under ORCP 21 A(1)(a), defendants argued that the court lacked subject matter jurisdiction: They challenged the sufficiency of plaintiffs' allegations regarding standing on the third claim and also contended that plaintiffs would not be able prove standing on that claim. In response, plaintiffs submitted declarations asserting facts that, they contended, showed that they have standing. Defendants did not attempt to contradict plaintiffs' submitted facts; instead, they argued before the trial court that, as a matter of law, those facts did not support a conclusion that plaintiffs had standing. As noted above, the trial court did not reach that issue. On appeal, defendants contend that we may decide the standing issue on the record created below and that we should affirm on that alternative ground. Plaintiffs do not object to our consideration of the jurisdictional issue, and they assert on the merits that they have standing.

Under these particular circumstances we conclude that it is appropriate for us to address standing as an alternative basis for affirmance that was raised below. *See Sherertz*, 314 Or App at 341 (when a party on appeal made an alternative argument in the trial court and "the argument is properly presented again on appeal and raises a question of law, we may simply resolve it, typically remanding only if it is necessary for the trial court to make factual findings from conflicting evidence, exercise discretion, or the like"). The factual record regarding standing is undisputed—defendants had the opportunity to, but did not, submit evidence contradicting the declarations that plaintiffs submitted below, and they have not otherwise challenged the credibility of plaintiffs' declarations. We recognize that ORCP 21 A(2)(b) allows a trial court discretion in whether to "determine the existence or nonexistence of the facts supporting the asserted

---

Consequently, we apply the same standards of review under the reorganized rule that we did under the older version.

defenses [at this stage] or * * * defer any determination until further discovery or until trial on the merits" and that discretion must be guided by the principle that the court must not prematurely decide disputed facts that go to the merits of the underlying claim, *Munson*, 264 Or App at 695 (citing *Black*, 337 Or at 265). In many cases, the need for the trial court to exercise that discretion would counsel against our resolution of this kind of alternative basis on appeal. However, in this case, there is no overlap between the jurisdictional facts regarding standing and the merits of the underlying claims, no one contends that any discovery would be pertinent, and no one has identified, nor do we perceive, any reason that the trial court would defer a determination on standing until later in the proceedings. Thus, we address whether plaintiffs have standing to assert the third claim.

To have standing under the Uniform Declaratory Judgments Act, "a plaintiff must establish that his or her 'rights, status, or other legal relations' are 'affected by' the relevant instrument"—in this case, various laws and a constitutional provision. *Morgan v. Sisters School District #6*, 353 Or 189, 194-95, 301 P3d 419 (2013) (quoting ORS 28.020). The Supreme Court has identified three considerations that determine standing under that statute: "First, the plaintiff must establish that the challenged law causes 'some injury to or impact upon a legally recognized interest of the plaintiff's, beyond an abstract interest in the correct application or the validity of the law.'" *MT & M Gaming, Inc. v. City of Portland*, 360 Or 544, 554-55, 383 P3d 800 (2016) (quoting *Morgan*, 353 Or at 195 (brackets omitted)). "Any interest may qualify as long as it is legally recognized," *id.* at 555 (internal quotation marks omitted), and the interest may be affected indirectly—for example, an economic interest of a property owner may be affected by the result of the challenged law's "operation on state and local governments" rather than their property being directly subject to the law. *Id.* at 557 (describing holding of *League of Oregon Cities v. State of Oregon*, 334 Or 645, 56 P3d 892 (2002)). Next, "a plaintiff must show that the claimed injury or impact is real or probable, not hypothetical or speculative." *Id.* at 555. And finally, "the plaintiff must show that a decision by the court will in some sense rectify the injury, *i.e.*, that it will have 'a

practical effect on the rights that the plaintiff is seeking to vindicate.'" *Id.* (quoting *Morgan*, 353 Or at 197).

Plaintiffs assert that the schoolchildren plaintiffs have a qualifying interest in adequate funding for schools under the challenged laws pursuant to statutes that entitle and require them to attend school, ORS 339.010, ORS 339.020, and the constitution, specifically, Article VIII, section 8.[11] Defendants respond that only school districts, not schoolchildren, have a legally recognized interest in adequate school funding.

We agree with the schoolchildren plaintiffs that they have a legally recognized interest in school funding. As noted, school-age children are statutorily entitled to a public education—and, absent certain exceptions, are required by law to attend school. That statutory right and requirement carries with it an interest in whether, and how, the schools that children are mandated to attend are funded. To the extent that there is any uncertainty about the relationship between school funding and a quality education or the legislature's duty to provide such funding, Article VIII, section 8, recognizes that the quality of education provided by the public education system is directly related to its level of funding and requires that the legislature provide adequate funding. *See* Or Const, Art VIII, § 8(1) ("The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law[.]")

The fact that the schoolchildren are not directly affected by the challenged actions—that their interest in an

---

[11] ORS 339.010(1) provides that, with certain exceptions, "all children between the ages of 6 and 18 years who have not completed the 12th grade are required to regularly attend a public full-time school during the entire school term." ORS 339.020(1) provides that, with certain exceptions, "every person having control of a child between the ages of 6 and 18 years who has not completed the 12th grade is required to send the child to, and maintain the child in, regular attendance at a public full-time school during the entire school term." Article VIII, section 8(1), provides as follows:

"The Legislative Assembly shall appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law, and publish a report that either demonstrates the appropriation is sufficient, or identifies the reasons for the insufficiency, its extent, and its impact on the ability of the state's system of public education to meet those goals."

adequately funded education flows through school districts, which receive the funding and then provide education to students—does not undercut their interest. As in *League of Oregon Cities*, the laws in question operate on schools, and that operation affects the educational interest of the students. 334 Or at 660 (plaintiffs had standing where they showed that the challenged law "would lead to increased development and how, specifically, that increased development would injure them").[12]

Next, "a plaintiff must show that the claimed injury or impact is real or probable, not hypothetical or speculative." *MT & M Gaming, Inc.*, 360 Or at 555. Defendants argue that any injury to the schoolchildren from the management of the common school lands is hypothetical and speculative. That argument is based on the way each school district's funding is calculated. Defendants assert that the amount provided by the common school fund to each district has no effect on the total amount of funding for the district, because the common school fund amount is defined as part of "local revenue," ORS 327.011(1)(c), and local revenue is subtracted from the legislative appropriation apportioned to each district, ORS 327.008(2)(a).[13] Thus, defendants contend, each district will receive the same amount of overall funding regardless of the amount that the common school fund provides, because the amount the district receives is actually set by legislative appropriations, and the common school fund amount is merely subtracted from that amount.

Defendants' argument depends on the assumption that the apportionment calculations are based on a total school funding amount that does not take into account any amount provided by the common school fund. It is true that the State School Fund does not include common school fund contributions. But that does not mean that the legislature does not take into account the common school fund contributions in deciding how to fund public education and therefore

---

[12] Defendants also contend that the schoolchildren plaintiffs lack a legally recognized interest because of the way school funding is calculated. We address that argument below, as we find it more relevant to the second and third prongs of the inquiry.

[13] ORS 327.008(2)(a) provides for funding through the State School Fund, which is part of the general fund and includes legislative appropriations for public education funding from a variety of sources. ORS 327.008(1).

that those contributions have no effect on school funding. To the contrary, the legislature's choices regarding appropriations to the State School Fund must take into consideration funding amounts from the common school fund.

Article VIII, section 8, requires the legislature to fund public education adequately to meet its quality goals. The legislature has acknowledged, in its biennial reports, that it has not done so. Given that situation, we cannot assume, as defendants would have us do, that if the common school fund were to contribute more to overall school funding, the legislature would decrease its appropriations to keep overall school funding at the same level. Rather, to comply with the constitutional mandate, if the common school fund were to contribute more to overall school funding, it is more reasonable to assume that the legislature would use that additional amount to close the acknowledged funding gap. Thus, the fact that common school fund amounts are ultimately subtracted from each district's share of the State School Fund does not mean that amount provided by the common school fund does not affect the overall amount available for school funding and thus the amount provided for the education of the schoolchildren plaintiffs.

Finally, because the common school fund contributions to education funding affect the amount provided to fund the schoolchildren plaintiffs' education, we also conclude that plaintiffs showed that "a decision by the court will in some sense rectify the injury, *i.e.*, that it will have 'a practical effect on the rights that the plaintiff is seeking to vindicate.'" *MT & M Gaming, Inc.*, 360 Or at 557 (quoting *Morgan*, 353 Or at 197). A court's decision on the law governing the management of the common school fund will have practical effects on the amount that the common school fund contributes to the schoolchildren plaintiffs' education, which will have a practical effect on their educational interest. The schoolchildren plaintiffs have standing to bring the third claim.

In light of our disposition, we need not address plaintiffs' remaining assignments of error, regarding proposed amendments to the complaint; the court may address those issues on remand.

Reversed and remanded.